RICHARD JOHN BAKER AND ANOTHER v.
GERALD R. NELSON.

191 N. W. (2d) 185.

October 15, 1971—No. 43009.

*R. Michael Wetherbee,* for appellants.

*George M. Scott,* County Attorney, and *David E. Mikkelson* Assistant County Attorney, for respondent.

PETERSON, JUSTICE.

The questions for decision are whether a marriage of two persons of the same sex is authorized by state statutes and, if not, whether state authorization is constitutionally compelled.

Petitioners, Richard John Baker and James Michael McConnell, both adult male persons, made application to respondent, Gerald R. Nelson, clerk of Hennepin County District Court, for a marriage license, pursuant to Minn. St. 517.08. Respondent declined to issue the license on the sole ground that petitioners were of the same sex, it being undisputed that there were otherwise no statutory impediments to a heterosexual marriage by either petitioner.

The trial court, quashing an alternative writ of mandamus, ruled that respondent was not required to issue a marriage license to petitioners and specifically directed that a marriage license not be issued to them. This appeal is from those orders. We affirm.

1. Petitioners contend, first, that the absence of an express statutory prohibition against same-sex marriages evinces a legislative intent to authorize such marriages. We think, however, that a sensible reading of the statute discloses a contrary intent.

Minn. St. c. 517, which governs "marriage," employs that term as one of common usage, meaning the state of union between persons of the opposite sex.[1] It is unrealistic to think that the original draftsmen of our marriage statutes, which date from territorial days, would have used the term in any different sense. The term is of contemporary significance as well, for the present statute is replete with words of heterosexual import such

---

[1] Webster's Third New International Dictionary (1966) p. 1384 gives this primary meaning to marriage: "1 a: the state of being united to a person of the opposite sex as husband or wife."

Black, Law Dictionary (4 ed.) p. 1123 states this definition: "Marriage * * * is the civil status, condition, or relation of one man and one woman united in law for life, for the discharge to each other and the community of the duties legally incumbent on those whose association is founded on the distinction of sex."

as "husband and wife" and "bride and groom" (the latter words inserted by L. 1969, c. 1145, § 3, subd. 3).

We hold, therefore, that Minn. St. c. 517 does not authorize marriage between persons of the same sex and that such marriages are accordingly prohibited.

2. Petitioners contend, second, that Minn. St. c. 517, so interpreted, is unconstitutional. There is a dual aspect to this contention: The prohibition of a same-sex marriage denies petitioners a fundamental right guaranteed by the Ninth Amendment to the United States Constitution, arguably made applicable to the states by the Fourteenth Amendment, and petitioners are deprived of liberty and property without due process and are denied the equal protection of the laws, both guaranteed by the Fourteenth Amendment.[2]

These constitutional challenges have in common the assertion that the right to marry without regard to the sex of the parties is a fundamental right of all persons and that restricting marriage to only couples of the opposite sex is irrational and invidiously discriminatory. We are not independently persuaded by these contentions and do not find support for them in any decisions of the United States Supreme Court.

The institution of marriage as a union of man and woman, uniquely involving the procreation and rearing of children within a family, is as old as the book of Genesis. Skinner v. Oklahoma ex rel. Williamson, 316 U. S. 535, 541, 62 S. Ct. 1110, 1113, 86 L. ed. 1655, 1660 (1942), which invalidated Oklahoma's Habitual Criminal Sterilization Act on equal protection grounds, stated in part: "Marriage and procreation are fundamental to the very existence and survival of the race." This historic institution manifestly is more deeply founded than the asserted contemporary concept of marriage and societal interests for which petitioners contend. The due process clause of the Fourteenth

---

[2] We dismiss without discussion petitioners' additional contentions that the statute contravenes the First Amendment and Eighth Amendment of the United States Constitution.

Amendment is not a charter for restructuring it by judicial legislation.

Griswold v. Connecticut, 381 U. S. 479, 85 S. Ct. 1678, 14 L. ed. 2d 510 (1965), upon which petitioners rely, does not support a contrary conclusion. A Connecticut criminal statute prohibiting the use of contraceptives by married couples was held invalid, as violating the due process clause of the Fourteenth Amendment. The basic premise of that decision, however, was that the state, having authorized marriage, was without power to intrude upon the right of privacy inherent in the marital relationship. Mr. Justice Douglas, author of the majority opinion, wrote that this criminal statute "operates directly on an intimate relation of husband and wife," 381 U. S. 482, 85 S. Ct. 1680, 14 L. ed. 2d 513, and that the very idea of its enforcement by police search of "the sacred precincts of marital bedrooms for telltale signs of the use of contraceptives * * * is repulsive to the notions of privacy surrounding the marriage relationship," 381 U. S. 485, 85 S. Ct. 1682, 14 L. ed. 2d 516. In a separate opinion for three justices, Mr. Justice Goldberg similarly abhorred this state disruption of "the traditional relation of the family—a relation as old and as fundamental as our entire civilization." 381 U. S. 496, 85 S. Ct. 1688, 14 L. ed. 2d 522.[3]

The equal protection clause of the Fourteenth Amendment, like the due process clause, is not offended by the state's classification of persons authorized to marry. There is no irrational or invidious discrimination. Petitioners note that the state does not impose upon heterosexual married couples a condition that they have a proved capacity or declared willingness to procreate, posing a rhetorical demand that this court must read such condition into the statute if same-sex marriages are to be prohibited.

---

[3] The difference between the majority opinion of Mr. Justice Douglas and the concurring opinion of Mr. Justice Goldberg was that the latter wrote extensively concerning this right of marital privacy as one preserved to the individual by the Ninth Amendment. He stopped short, however, of an implication that the Ninth Amendment was made applicable against the states by the Fourteenth Amendment.

Even assuming that such a condition would be neither unrealistic nor offensive under the Griswold rationale, the classification is no more than theoretically imperfect. We are reminded, however, that "abstract symmetry" is not demanded by the Fourteenth Amendment.[4]

Loving v. Virginia, 388 U. S. 1, 87 S. Ct. 1817, 18 L. ed. 2d 1010 (1967), upon which petitioners additionally rely, does not militate against this conclusion. Virginia's antimiscegenation statute, prohibiting interracial marriages, was invalidated solely on the grounds of its patent racial discrimination. As Mr. Chief Justice Warren wrote for the court (388 U. S. 12, 87 S. Ct. 1824, 18 L. ed. 2d 1018):

"Marriage is one of the 'basic civil rights of man,' fundamental to our very existence and survival. Skinner v. Oklahoma, 316 U. S. 535, 541 (1942). See also Maynard v. Hill, 125 U. S. 190 (1888). To deny this fundamental freedom on so unsupportable a basis as the racial classifications embodied in these statutes, classifications so directly subversive of the principle of equality at the heart of the Fourteenth Amendment, is surely to deprive all the State's citizens of liberty without due process of law. The Fourteenth Amendment requires that the freedom of choice to marry not be restricted by invidious racial discriminations."[5]

---

[4] See, Patsone v. Pennsylvania, 232 U. S. 138, 144, 34 S. Ct. 281, 282, 58 L. ed. 539, 543 (1914). As stated in Tigner v. Texas, 310 U. S. 141, 147, 60 S. Ct. 879, 882, 84 L. ed. 1124, 1128, 130 A. L. R. 1321, 1324 (1940), and reiterated in Skinner v. Oklahoma ex rel. Williamson, 316 U. S. 535, 540, 62 S. Ct. 1110, 1113, 86 L. ed. 1655, 1659, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same."

[5] See, also, McLaughlin v. Florida, 379 U. S. 184, 85 S. Ct. 283, 13 L. ed. 2d 222 (1964), in which the United States Supreme Court, for precisely the same reason of classification based only upon race, struck down a Florida criminal statute which proscribed and punished habitual cohabitation only if one of an unmarried couple was white and the other black.

Loving does indicate that not all state restrictions upon the right to marry are beyond reach of the Fourteenth Amendment. But in commonsense and in a constitutional sense, there is a clear distinction between a marital restriction based merely upon race and one based upon the fundamental difference in sex.

We hold, therefore, that Minn. St. c. 517 does not offend the First, Eighth, Ninth, or Fourteenth Amendments to the United States Constitution.

Affirmed.