Louis B. Heller, J.
Plaintiff raises the question whether defendant is a man or woman.
In this annulment action plaintiff charges in her complaint “ the Plaintiff and the defendant were and are women, members of the Female Gender of the human race “ that on or about April 5, 1972 * * * the Plaintiff and Defendant were purportedly married”; that defendant fraudulently represented that the defendant’s name was Mark B-, when in fact defendant’s name was Marsha B-; that at the time of the marriage defendant fraudulently, with intent to deceive plaintiff and the authorities, represented 1 ‘ that defendant was and is a Male person and capable and qualified to marry with a female person that plaintiff believed defendant’s statements and representation and from.defendant’s dress and appearance “ to be a man capable of entering into a marriage state and performing all the duties and relations of a husband”; that “Plaintiff endeavored to cohabit with defendant as defendant’s wife, but was unable to have normal sexual intercourse with the defendant by reason of defendant’s physical incapacity ”; that “ defendant was and still is incapable of normal cohabitation or normal *114 sexual intercourse or of entering into the marriage state by reason of the fact that defendant does not have male sexual organs, does not possess a normal penis, and in fact does not have a Penis ”; that defendant “ was and still is a woman, a member of the Female Gender of the Human Species and hence defendant is incapable of normal cohabitation or normal sexual intercourse or of entering into the marriage with another woman ”; that “ at the time of the marriage and ever since [defendant] remained physically incapable of entering into the marriage state or of consummating the said marriage by reason of said condition and that said condition is incurable ”; that defendant, with knowledge of defendant’s disability and that the incapacity was permanent and incurable, fraudulently induced plaintiff to rely on defendant’s representation that defendant was physically capable of entering into the marriage, and plaintiff, relying upon defendant’s representation, did in fact enter into the marriage; “ that defendant, since the marriage, informed the Plaintiff, that defendant entered into the marriage for the sole purpose of alleviating defendant’s distressed mind and * * * thoughts that defendant though a female was truly a male, person, and for no other purpose and that at all times “ Plaintiff and defendant were and are Women, members of the Female Gender of the Human Race ”.
Defendant denies the allegations and asks for leave to amend the answer to include a counterclaim for divorce on the ground of abandonment in that more than one year first elapsed on January 18,1974 (during pendency of this action) since plaintiff abandoned defendant.
Plaintiff cross-moves for a physical examinaton of defendant.
Before considering the legal problems raised by the papers, an understanding of defendant’s history and background is helpful.
Defendant is what is commonly termed a transsexual.
“ Transsexualism is a disorder of gender indentity differentiation ” (Charles L. Ihlenfeld, M. D., Journal of Contemporary Psychotherapy, Vol. 6, No. 1, pp. 63-69, Winter 1973). Transsexuals strongly believe that their physical anatomies do not reflect their true genders. Thus, a transsexual with an apparently normal female anatomy will seek masculinization. While the condition is gender disorientation, the transsexual feels he was born with the wrong body. The origins of the condition are obscure and have not yet been isolated with sufficient certainty to be dealt with successfully. At present hormonal and surgical sex reassignment is the only known treatment for adults *115 since gender identity differentiation once established seems unsuitable and immune to analytic effort at alteration (Charles L. Ihlenfeld, M. D., supra).
The birth certificate identifies defendant as Marsha B-, a female. In April, 1972 defendant applied ex parte to this court for, and was granted, leave to assume the name Mark in place and stead of Marsha. Defendant’s petition in support of the application reads: “ That at the time of my birth it was thought that I was a female person and thus, I was given a female name which is reflected in my Certificate of Birth Registration. However, from my earliest youth, I have had difficulty as to my sexual identity, since I felt in myself1 that I was, in fact, a male person. However, the fact that I possessed what are ostensibly female genitalia, kept my doubts as to my true sexual identity quiescent;
“ As I grew older, I came to live in a constant state of torment since I felt that a male person was entrapped inside of me.
“ On March 14,19721 had surgery performed upon my person in the form of a mastectomy * * * and on March 16, 1972 * * * a hysterectomy. Both operations were performed so as to conform the physical manifestations of my sex with my true male identity.”
A specialist in the field of transsexual phenomena, says in support of the name change that defendant was under his care and treatment to resolve medical problems resulting from defendant’s conflict of gender identity; that clinical examination, testing and history confirm that he was dealing with a male entrapped in the body of a female and that change of name to a male designation will aid defendant’s orientation, psychological and emotional status.
If from the facts it appears that defendant could prevail on the counterclaim, the amendment should be allowed for that is the imprimatur of a proper amendment. But if from the facts the defendant may not prevail as a matter of law, the request to amend the answer to include a counterclaim for divorce should be denied.
A pleading may be amended to set forth subsequent or additional occurrences 'at any time by leave of the court. Such leave shall be given freely .(CPLR 3025, subd. [b]) but need not be granted in all cases. If the underlying facts relied on are the proper subject for relief, opportunity ought to be afforded the pleader to test the claim on the merits (Foman v. Davis, 371 U. S. 178, 182). ■ However, if the new matter is palpably insufficient or immaterial the court need not exercise its discretion *116 affirmatively; and leave should he denied (Norton v. Norton, 12 A D 2d 1003; McGrath v. City of New York, 191 N. Y. S. 2d 993). Generally, the inquiry is limited to the propriety of the amendment, not to the merits of the litigation or the sufficiency of the pleading (Brody v. Barry, 58 Misc 2d 265, affd. 60 Misc 2d 812; Daniels v. City of Albany, 21 A D 2d 920; Van Wie v. Gridley & Son, 21 A D 2d 842); and the question of sufficiency of the pleading is left to a motion addressed to it (Griffel v. Belfer, 20 A D 2d 890; Manning v. Hyland, 19 A D 2d 652). However, recently in East Asiatic Co. v. Corash (34 A D 2d 432, 434) the court modified ¡that view. It recognized that the practice of refusing to pass upon the merits of proposed amended pleadings “ has several precedents respectable because of their age, [and] represents a procedure which is no longer tolerable. The'' day when motion practice would ¡be allowed to proliferate through avoiding coming to grips with the substantial question is past.” ‘
Such approach should be followed. However, this should not be used as a pretext for trying the claim raised by the new matter. For the new matter (counterclaim) must be shown to have reasonable chance to succeed. (McKinney’s Cons. Laws of N. Y., Book 7B, CPLR, Practice Commentaries, David D. Siegel, p. 481, par. C3025.11.) In the light of defendant’s admissions in the name change application, the new matter has no such chance.1
In Norton (12 A D 2d 1003, supra) the court refused to permit defendant to amend the answer to plead a counterclaim, attacking the validity of a judgment of annulling plaintiff’s former marriage, where the counterclaim was palpably insufficient on its face.
When the insufficiency of the proposed pleading is clear as a matter of law it serves no useful purpose to allow an amended pleading (Keller v. Greyhound Corp., 41 Misc 2d 255).
Defendant’s proposed answer counterclaims “ for an absolute divorce and that the bonds of matrimony between plaintiff and defendant be forever dissolved ’ ’ and rests on the allegation that “ on April 5, 1972, plaintiff and defendant were married in the City and ¡State of New York. ” If no valid and binding marriage was in fact entered into, there is no basis in law for a judgment of divorce.
“Marriage” is defined as “ the civil status, condition, or relation of one man and one woman united in law for life, for the discharge to each other and the community of the duties légally incumbent on those whose association is founded on *117 the distinction of sex.” (Black’s Law Dictionary [4th ed.], p. 1123.) “ ‘ Marriage ’ may be defined as the status or relation of a man and a woman who have been legally united as husband and wife. It may be more particularly defined as the voluntary union for life of one man and one woman as husband and wife ” (52 Am. Jur. 2d, Marriage, § 1). Marriage was a custom long before the State issued licenses for that purpose. For a time marriage records were kept by the church. Some States even now recognize a common-law marriage which has neither the benefit of' license nor clergy. In all cases, however, marriage has always ¡been considered as the union of a man and a woman and we have been presented with no authority to the contrary (Jones v. Hallahan, 501 S. W. 2d 588 [Ky.]).
Neither by statutory nor decisional law has this State defined male and female. New York neither specifically prohibits marriage between persons of the same sex nor authorizes issuance of marriage license to such persons. However, marriage is and always has been a contract between a man and a woman (Morris v. Morris, 31 Misc 2d 548, 549).
That the law provides that physical incapacity for sexual relationship is ground for annulling a marriage sufficiently indicates the public policy that the marriage relationship exists with the result and for the purpose of begetting offspring (Mirizio v. Mirizio, 242 N. Y. 74, 81).
In Anonymous v. Anonymous (67 Misc 2d 982) the court declared that the so-called marriage ceremony ¡between plaintiff, a male, and defendant, also a male, who posed as a female and who submitted to surgery to allegedly become a female, did not in fact or law create a marriage contract and that the parties are not, and never were, husband and wife or parties to a valid marriage.
To our knowledge two other States have considered the question andjboth reached the same result that we reach now (Baker v. Nelson, 291 Minn. 310, app. dsmd. 409 U. S. 810; Jones v. Hallahan, supra).
Assuming, as urged, that defendant was a male entrapped in the body of a female, the record does not show that the entrapped male successfully escaped to enable defendant to perform male functions in a marriage. Attempted sex reassignment by mastectomy, hysterectomy, and androgenous hormonal therapy, has not achieved that result. The comment by Dr. George Burou, specialist in male-to-female surgery, who over the past 15 years has performed more than 700 such operations in Casablanca, applies with equal pertinency to this defendant: “ I don’t change *118 men into women. I transform male genitals into genitals that have a female aspect. All the rest is in the patient’s mind.” (Time Magazine, p. 63, Jan. 21, 1974.)
While it is possible that defendant may function as a male in other situations and in other relationships, defendant cannot function as a husband by assuming male duties and obligations inherent in the marriage relationship. As plaintiff asserts defendant “ does not have male sexual organs, does not possess a normal penis, and in fact does not have a penis.” Apparently, hormone treatments and surgery have not succeeded in supplying the necessary apparatus to enable defendant to function as a man for purposes of procreation. In the same way surgery has not reached that point that can provide a man with something resembling a normal female sexual organ, transplanting ovaries or a womb. Those are still beyond reach.
There is no present need for a physical examination of the defendant. At" this time plaintiff’s request for such examination is denied without prejudice if future events should prove such examination necessary.
Defendant’s motion for leave to amend the answer is denied; and plaintiff’s cross motion for a physical examination of the defendant is denied without prejudice.