QUESTION: May two individuals of the same sex validly apply for a marriage license, and is the clerk of the circuit court required to accept such an application and thereafter issue a license?
SUMMARY: Two individuals of the same sex may not validly apply for a marriage license; therefore, the clerk of the circuit court is not required to accept such an application and thereafter issue a license. Subject to constitutional limitations, the state has exclusive dominion over the legal institution of marriage, and the state alone has the prerogative of creating and overseeing the institution. See Light v. Meginniss, 22 So.2d 455 (Fla. 1945). Chapter 741, F. S. (1974 Supp.), which governs marriages in Florida, requires the county court judge or clerk of the circuit court to issue a marriage license, upon application, if there appears to be no impediment to the marriage, s. 741.01. Notwithstanding the fact that the law relating to marriages uses neuter terms, I am of the opinion that it does not contemplate "marriage" between persons of the same sex. Three reported decisions exist in the United States which have confronted this particular question. Singer v. Hara, 11 Wn. App. 247,522 P.2d 1187 (1974); Jones v. Hallahan, 501 S.W.2d 588, 63 A.L.R.3d 1195 (Ky.Ct.App. 1973); and Baker v. Nelson, 291 Minn. 310,191 N.W.2d 185 (1971), appeal dism'd, 409 U.S. 810 (1972). Each case is in accord with the opinion expressed herein. In absence of a statutory definition, words should be construed in their plain and ordinary sense. Pederson v. Green, 105 So.2d 1 (Fla. 1958). Webster's New International Dictionary, Second Edition, defines marriage as follows: A state of being married, or being united to a person or persons of the opposite sex as husband or wife; also, the mutual relation of husband and wife; wedlock; abstractly, the institution whereby men and women are joined in a special kind of social and legal dependence, for the purpose of founding and maintaining a family. Black's Law Dictionary, Fourth Edition, defines marriage as: The civil status, condition or relation of one man and one woman united in law for life, for the discharge to each other and the community of the duties legally incumbent upon those whose association is founded on the distinction of sex. In B v. B, 78 Misc.2d 112, 355 N.Y.S.2d 712 (1974), and Anonymous v. Anonymous, 67 Misc.2d 982, 325 N.Y.S.2d 499 (1971), citing 52 Am.Jur.2d Marriages s. 1, the courts stated that a marriage is and always has been a contract between a man and a woman. In Jones v. Hallahan, supra, the court stated: Marriage was a custom long before the state commenced to issue licenses for that purpose. For a time the records of marriage were kept by the church. Some states even now recognize a common-law marriage which has neither the benefit of license nor clergy. In all cases, however, marriage has always been considered as the union of a man and a woman and we have been presented with no authority to the contrary. It appears to us that appellants are prevented from marrying, not by the statutes of Kentucky or the refusal of the County Court Clerk of Jefferson County to issue them a license, but rather by their own incapability of entering into a marriage as that term is defined. A license to enter into a status or a relationship which the parties are incapable of achieving is a nullity. If the appellants had concealed from the clerk the fact that they were of the same sex and he had issued a license to them and a ceremony had been performed, the resulting relationship would not constitute a marriage. The United States Supreme Court in dismissing the appeal in Baker v. Nelson, supra, for want of substantial federal question, in effect ruled that the prohibition against persons of the same sex marrying does not constitute a cognizable claim under either the First, Eighth, Ninth, orFourteenth Amendments to the United States Constitution. It is interesting to note that in Singer v. Hara, supra, the court considered the effect of the state's equal rights amendment on this question. The amendment is substantially similar to the ERA now before the states for ratification. Prior to its passage, the opponents of the state's ERA argued that such an amendment would legalize homosexual marriages. In ruling that ratification of the ERA does not legalize homosexual marriages, the court noted that the primary purpose of the ERA is to overcome discriminatory legal treatment as between men and women "on account of sex." The court further stated that laws which differentiate between the sexes are permissible so long as they are based upon the unique physical characteristics of a particular sex rather than a person's membership in a particular sex per se. Laws or policies prohibiting homosexual marriages are clearly based upon the former principle. Your question is answered in the negative.