Rev. Nancy WILSON and Dr. Paula Schoenwether, Plaintiffs,

v.

Richard L. AKE and John Ashcroft, Defendants.

No. 8:04–CV–1680–T–30TBM.

United States District Court, M.D. Florida, Tampa Division.

Jan. 19, 2005.

Robert I. Barrar, Jr., Law Offices of Ellis Rubin and Robert I. Barrar, Ellis Stuart Rubin, Rubin & Rubin, Miami, FL, Guy Bennett Rubin, Rubin & Rubin, Stuart, FL, for Plaintiffs.

David Jay Glantz, Florida Attorney General, Civil Litigation Division, Ft. Lauderdale, FL, for Richard L. Ake, Defendant.

W. Scott Simpson, U.S. Department of Justice, Washington, DC, for Defendant.

Erik W. Stanley, Liberty Counsel, Longwood, FL, for Cody Taylor, Intervenor Defendant.

## ORDER

MOODY, District Judge.

THIS CAUSE comes before the Court upon United States Attorney General John Ashcroft's Motion to Dismiss (Dkt.# 31), Memorandum in Support of United States Attorney General Ashcroft's Motion to Dismiss (Dkt.# 39), and Plaintiffs' Memorandum of Law in Opposition to the United States Attorney General's Motion to Dismiss (Dkt.# 48). The Court, having considered the Motion and Memoranda, and being otherwise fully advised, finds that the Motion should be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Nancy Wilson and Paula Schoenwether allege that they are a lesbian couple who reside together in the Middle District of Florida. According to the Complaint, Plaintiffs were legally married in the State of Massachusetts and possess a valid marriage license from that State. Plaintiffs allege that they personally presented their Massachusetts marriage license to a Deputy Clerk at the Clerk of the Circuit Court's Office in Hillsborough County, Florida, asking for "acceptance of the valid and legal Massachusetts marriage license." (Complaint, ¶ 12). Plaintiffs allege that "[t]heir demand was refused by Defendant Ake, whose Deputy Clerk stated that according to Federal and Florida law, the Clerk is not allowed to recognize, for marriage purposes, the Massachusetts marriage license, because Federal and Florida law prohibit such recognition." (Complaint, ¶ 12).

Plaintiffs have filed a Complaint for Declaratory Judgment asking this Court to declare the Federal Defense of Marriage Act ("DOMA"), 1 U.S.C. § 7; 28 U.S.C. § 1738C,[1] and Florida Statutes § 741.212,[2] unconstitutional and to enjoin their en-

---

1. The Defense of Marriage Act ("DOMA") provides:

   No State, territory, or possession of the United States, or Indian tribe, shall be required to give effect to any public act, record, or judicial proceeding of any other State, territory, possession, or tribe respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State, territory, possession, or tribe, or a right or claim arising from such relationship.
   28 U.S.C. § 1738C.

   \* \* \* \* \* \*

   In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word "marriage" means only a legal union between one man and one woman as husband and wife, and the word "spouse" refers only to a person of the opposite sex who is a husband or a wife. 1 U.S.C. § 7

2. Florida Statutes § 741.212, Marriages between persons of the same sex, provides:

   (1) Marriages between persons of the same sex entered into in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either domestic or foreign, or any other place or location, or relationships between persons of the same sex which are treated as marriages in any jurisdiction, whether within or outside the State of Florida, the United States, or any other jurisdiction, either domestic or foreign, or any other place or location, are not recognized for any purpose in this state.
   (2) The state, its agencies, and its political subdivisions may not give effect to any public act, record, or judicial proceeding of any state, territory, possession, or tribe of the United States or of any other jurisdiction, either domestic or foreign, or any other place or location respecting either a marriage or relationship not recognized under subsection (1) or a claim arising from such a marriage or relationship.
   (3) For purposes of interpreting any state statute or rule, the term "marriage" means only a legal union between one man and one woman as husband and wife, and the

forcement. Plaintiffs have sued, in their official capacities, Richard L. Ake, Clerk of the Circuit Court in Hillsborough County, Florida, and United States Attorney General John Ashcroft.[3]

Plaintiffs allege that the two statutes violate the Full Faith and Credit Clause, the Due Process clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, the Privileges and Immunities Clause, and the Commerce Clause of the United States Constitution.

Plaintiffs assert that Florida is required to recognize Plaintiffs' valid Massachusetts marriage license because DOMA exceeds Congress' power under the Full Faith and Credit Clause. Plaintiffs also argue that twelve United States Supreme Court cases (which Plaintiffs label "The Dynamite Dozen"), beginning with *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), and ending with *Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), demonstrate a recent trend by the United States Supreme Court to expand "the fundamental liberty of personal autonomy in connection with one's intimate affairs and family relations." (Plaintiffs' Memorandum of Law in Opposition (Dkt.# 48), p. 11). Plaintiffs urge this Court to expand on "The Dynamite Dozen" by finding that the right to enter into a same-sex marriage is protected by the Constitution.

Defendant Ashcroft has moved to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6), Fed.R.Civ.P., on the grounds that the Complaint fails to state a claim upon which relief can be granted.[4] The United States, in a well-written Memorandum, argues that Plaintiffs' Complaint is barred as a matter of law because DOMA does not infringe on any of Plaintiffs' fundamental rights and is a legitimate exercise of the power granted to Congress by the Full Faith and Credit Clause.[5]

### *MOTION TO DISMISS STANDARD*

██ A complaint should not be dismissed pursuant to Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Bracewell v. Nicholson Air Services, Inc.,* 680 F.2d 103, 104 (11th Cir. 1982); *see also Rickman v. Precisionaire, Inc.,* 902 F.Supp. 232, 233 (M.D.Fla.1995) (citing *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). For Rule 12(b)6 purposes, the court considers as part of the complaint any written instrument filed with it as an exhibit. *See* Rule 10(c) Fed.R.Civ.P. ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). In ruling on a motion to dismiss, the court must accept plaintiff's well-pleaded facts as true, and construe the complaint in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Devel. Corp.,* 711 F.2d 989, 994–95 (11th Cir. 1983); *Rickman,* 902 F.Supp. at 233 (citing *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct.

---

term "spouse" applies only to a member of such a union.

**3.** Pursuant to Florida Statutes § 741.01(1), marriage licenses are issued by a county court judge or Clerk of the Circuit Court.

**4.** Defendant Ake filed an Answer and Defenses (Dkt.# 12) to Plaintiffs' Complaint on Au-

gust 4, 2004, and an Amended Answer and Defenses (Dkt.# 13) on August 10, 2004.

**5.** Defendant Ashcroft only moves to dismiss Plaintiffs' claim that DOMA is unconstitutional and does not address the validity of Florida Statutes § 741.212.

1683, 40 L.Ed.2d 90 (1974)). Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas District*, 992 F.2d 1171, 1174 (11th Cir.1993); *Hunt v. American Bank & Trust Co.*, 783 F.2d 1011, 1013 (11th Cir.1986).

## *FULL FAITH AND CREDIT CLAUSE*

■ Plaintiffs' Complaint asserts that DOMA conflicts with the Constitution's Full Faith and Credit Clause. Article IV, Section I of the Constitution provides:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State; And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

Plaintiffs argue that "[o]nce Massachusetts sanctioned legal same-gender marriage, all other states should be constitutionally required to uphold the validity of the marriage." (Complaint, ¶ 23). Plaintiffs believe that the differences in individuals' rights to enter into same-sex marriages among the States, such as Florida and Massachusetts, is exactly what the Full Faith and Credit Clause prohibits. They also assert that DOMA is beyond the scope of Congress' legislative power under the Full Faith and Credit Clause because Congress may only regulate what effect a law may have, it may not dictate that the law has no effect at all.

This Court disagrees with Plaintiff's interpretation of the Full Faith and Credit Clause. Congress' actions in adopting DOMA are exactly what the Framers envisioned when they created the Full Faith and Credit Clause. DOMA is an example of Congress exercising its powers under the Full Faith and Credit Clause to determine the effect that "any public act, record, or judicial proceeding of any other State, territory, possession, or tribe respecting a relationship between persons of the same sex that is treated as a marriage" has on the other States. 28 U.S.C. § 1738C. Congress' actions are an appropriate exercise of its power to regulate conflicts between the laws of two different States, in this case, conflicts over the validity of same-sex marriages.

■ Adopting Plaintiffs' rigid and literal interpretation of the Full Faith and Credit would create a license for a single State to create national policy. *See Nevada v. Hall*, 440 U.S. 410, 423–24, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979)("Full Faith and Credit does not ... enable one state to legislate for the other or to project its laws across state lines so as to preclude the other from prescribing for itself the legal consequences of acts within it.")(quoting *Pacific Ins. Co. v. Industrial Accident Comm'n*, 306 U.S. 493, 504–05, 59 S.Ct. 629, 83 L.Ed. 940 (1939)); *Williams v. North Carolina*, 317 U.S. 287, 296, 63 S.Ct. 207, 87 L.Ed. 279 (1942) ("Nor is there any authority which lends support to the view that the full faith and credit clause compels the courts of one state to subordinate the local policy of that state, as respects its domiciliaries, to the statutes of any other state."). The Supreme Court has clearly established that "the Full Faith and Credit Clause does not require a State to apply another State's law in violation of its own legitimate public policy." *Hall*, 440 U.S. at 422, 99 S.Ct. 1182 (citing *Pacific Ins. Co.*, 306 U.S. at 493, 59 S.Ct. 629). Florida is not required to recognize or apply Massachusetts' same-sex marriage law because it clearly conflicts with Flori-

da's legitimate public policy of opposing same-sex marriage. *See infra* pp. 9–18; Fla. Stat. § 741.212.[6]

## BAKER v. NELSON

The United States argues that this Court is bound by the United States Supreme Court's decision in *Baker v. Nelson*, 291 Minn. 310, 191 N.W.2d 185 (1971), *appeal dismissed*, 409 U.S. 810, 93 S.Ct. 37, 34 L.Ed.2d 65 (1972). In *Baker v. Nelson*, two adult males' application for a marriage license was denied by the Clerk of the Hennepin County District Court because the petitioners were of the same sex. The plaintiffs, following the quashing of a writ of mandamus directing the clerk to issue a marriage license, appealed to the Minnesota Supreme Court. *Id.* at 311, 191 N.W.2d at 185. Plaintiffs argued that Minnesota Statute § 517.08, which did not authorize marriage between persons of the same sex, violated the First, Eighth, Ninth and Fourteenth Amendments of the United States Constitution. *Id.* at 312, 191 N.W.2d at 186. The Minnesota Supreme Court rejected plaintiffs' assertion that "the right to marry without regard to the sex of the parties is a fundamental right of all persons" and held that § 517.08 did not violate the Due Process Clause or Equal Protection Clause. *Id.* at 312–15, 191 N.W.2d at 186–87.

The plaintiffs then appealed the Minnesota Supreme Court's ruling to the United States Supreme Court pursuant to 28 U.S.C. 1257(2).[7] Under 28 U.S.C. 1257(2), the Supreme Court had no discretion to refuse to adjudicate the case on its merits. *Hicks v. Miranda*, 422 U.S. 332, 344, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). The Supreme Court dismissed the appeal "for want of a substantial federal question." *Baker*, 409 U.S. at 810, 93 S.Ct. 37.

Plaintiffs assert that *Baker v. Nelson* is not binding upon this Court because the Supreme Court did not issue a written opinion and because the case was decided thirty-two (32) years ago, before the "current civil rights revolution." (Plaintiffs' Memorandum of Law in Opposition (Dkt.# 48), pp. 9–10). This Court disagrees. A dismissal for lack of a substantial federal question constitutes an adjudication on the merits that is binding on lower federal courts. *See Hicks*, 422 U.S. at 344, 95 S.Ct. 2281. As Justice White noted, the Court was "not obligated to grant the case plenary consideration … but [the Court was] required to deal with its merits." *Id; see also Ohio ex rel. Eaton v. Price*, 360 U.S. 246, 247, 79 S.Ct. 978, 3 L.Ed.2d 1200 (1959) ("(v)otes to affirm summarily, and to dismiss for want of a substantial federal question, it hardly needs comment, are votes on the merits of a case …").

Although *Baker v. Nelson* is over thirty (30) years old, the decision addressed the

---

6. Under Plaintiffs' interpretation of the clause, a single State could mandate that all the States recognize bigamy, polygamy, marriages between blood relatives or marriages involving minor children.

7. At the time, 28 U.S.C. 1257(2) provided:
   Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court as follows:

(2) [b]y appeal, where is drawn in question the validity of a statute of any state on the ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity. This appeal as of right was eliminated by the Supreme Court Case Selections Act (Public Law 100–352), which became law on June 27, 1988.

same issues presented in this action and this Court is bound to follow the Supreme Court's decision. *See Hicks,* 422 U.S. at 344–45, 95 S.Ct. 2281 ("lower courts are bound by summary decision by this Court 'until such time as the Court informs (them) that (they) are not.' ")(quoting *Doe v. Hodgson,* 478 F.2d 537, 539 (2d Cir. 1973)); *see also McConnell v. Nooner,* 547 F.2d 54, 55–56 (8th Cir.1976); *Adams v. Howerton,* 486 F.Supp. 1119, 1124 (C.D.Cal.1980), *aff'd* 673 F.2d 1036, 1039 n. 2 (9th Cir.1982).

The Supreme Court's holding in *Lawrence* does not alter the dispositive effect of *Baker. See Agostini v. Felton,* 521 U.S. 203, 207, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) ("The Court neither acknowledges nor holds that other courts should ever conclude that its more recent cases have, by implication, overruled an earlier precedent."); *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decision."). The Supreme Court has not explicitly or implicitly overturned its holding in *Baker* or provided the lower courts, including this Court, with any reason to believe that the holding is invalid today.[8] Accordingly, *Baker v. Nelson* is binding precedent upon this Court and Plaintiffs' case against Attorney General Ashcroft must be dismissed.

8. This Court disagrees with the holding in *In re Kandu,* 315 B.R. 123, 138 (Bkrtcy. W.D.Wash.2004), that *Baker* is not binding precedent.

## DUE PROCESS

▪ Recent Eleventh Circuit precedent also constrains this Court to rule contrary to Plaintiffs' position. Plaintiffs argue that their right to marry someone of the same sex is a fundamental right that is guaranteed by the Fourteenth Amendment's Due Process Clause.[9] If Plaintiffs have a fundamental right to enter into a same-sex marriage, then this Court must apply a " 'strict scrutiny' analysis that forbids government infringement on a fundamental liberty interest ·unless the infringement is narrowly tailored to serve a compelling state interest.' " *In re Kandu,* 315 B.R. 123, 138 (Bkrtcy.W.D.Wash.2004)(quoting *Washington v. Glucksberg,* 521 U.S. 702, 721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)). If the right to marry someone of the same sex is not a fundamental right, then the Court will apply the more liberal rational basis analysis in determining whether DOMA is constitutional. *Glucksberg,* 521 U.S. at 728, 117 S.Ct. 2302.

The Supreme Court has defined fundamental rights as those liberties that are "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Glucksberg,* 521 U.S. at 721, 117 S.Ct. 2302 (quoting *Palko v. Connecticut,* 302 U.S. 319, 325–26, 58 S.Ct. 149, 82 L.Ed. 288 (1937)). The Court observed that the Due Process clause "specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition.' " *Glucksberg,* at 720–21, 117 S.Ct. 2258 (quoting *Moore v. East*

9. The Court notes that the Fourteenth Amendment only applies to the states and not the federal government. Plaintiffs' claim should have been brought pursuant to the Due Process Clause of the Fifth Amendment.

*Cleveland,* 431 U.S. 494, 503, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977)(plurality opinion)).

Although the Supreme Court has held that marriage is a fundamental right, *Glucksberg,* 521 U.S. at 720, 117 S.Ct. 2258, no federal court has recognized that this right includes the right to marry a person of the same sex. *See Kandu,* 315 B.R. at 139; *Standhardt v. Superior Court of State,* 206 Ariz. 276, 281, 77 P.3d 451, 456 (2003). Plaintiffs urge this Court to interpret the Supreme Court's decision in *Lawrence v. Texas* as establishing a fundamental right to private sexual intimacy. Plaintiffs argue that this Court should expand the fundamental right recognized in *Lawrence* to include same-sex marriages.

In *Lawrence,* the Supreme Court struck down a Texas statute that criminalized private sexual conduct between consenting adults of the same sex. 539 U.S. at 578–79, 123 S.Ct. 2472. The Court found that the statute could not stand under rational review because it did not further a legitimate state interest that justified the intrusion into the personal lives of homosexuals. *Id.*

But the Supreme Court's decision in *Lawrence* cannot be interpreted as creating a fundamental right to same-sex marriage. First, the Eleventh Circuit disagrees with Plaintiffs' assertion that *Lawrence* created a fundamental right in private sexual intimacy and this Court must follow the holdings of the Eleventh Circuit. *See Lofton v. Sec. of Dept. of Children and Family Services,* 358 F.3d 804, 817 (11th Cir.), *reh'g en banc denied by,* 377 F.3d 1275 (2004), *and cert. denied,* 543 U.S. ——, 125 S.Ct. 869, 160 L.Ed.2d 825 (2005) ("We conclude that it is a strained and ultimately incorrect reading of *Lawrence* to interpret it to announce a new fundamental right.");

*Williams v. Attorney General of Alabama,* 378 F.3d 1232, 1238 (11th Cir. 2004); *see also Standhardt,* 206 Ariz. at 281–82, 77 P.3d at 456–57. The Court in *Lawrence* did not find private sexual conduct between consenting adults to be a fundamental right. *Lawrence,* 539 U.S. at 586, 123 S.Ct. 2472 (Scalia, J., dissenting) ("nowhere does the Court's opinion declare that homosexual sodomy is a 'fundamental right' under the Due Process Clause; nor does it subject the Texas law to the standard of review that would be appropriate (strict scrutiny) if homosexual sodomy *were* a 'fundamental right.'"). Rather, the Court determined that the Texas statute failed under the rational basis analysis. *Lawrence,* 539 U.S. at 578–79, 123 S.Ct. 2472.

Second, the majority in *Lawrence* was explicitly clear that its holding did not extend to the issue of same-sex marriage, stating that the case "does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter." *Lawrence* 539 U.S. at 578, 123 S.Ct. 2472; *see also Standhardt,* 206 Ariz. at 282, 77 P.3d at 457 ("If the Court did not view such an intimate expression of the bond securing a homosexual relationship to be a fundamental right, we must reject any notion that the Court intended to confer such status on the right to secure state-sanctioned recognition of such a union."). It is disingenuous to argue that the Supreme Court's precise language in *Lawrence* established a fundamental right to enter into a same-sex marriage.

Moreover, this Court is not inclined to elevate the ability to marry someone of the same sex to a fundamental right. Although the Court recognizes the importance of a heterosexual or homosexu-

al individual's choice of a partner, not all important decisions are protected fundamental rights. *Glucksberg,* 521 U.S. at 727–28, 117 S.Ct. 2258. The Supreme Court has cautioned against the dangers of establishing new fundamental rights:

> By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of the members of this Court. *Glucksberg,* 521 U.S. at 720, 117 S.Ct. 2258.

■ The Eleventh Circuit has also noted that once a right is elevated to a fundamental right, it is "effectively removed from the hands of the people and placed into the guardianship of unelected judges. We are particularly mindful of this fact in the delicate area of morals legislation." *Williams,* 378 F.3d at 1250 (internal citations omitted). "Of course, the Court may in due course expand *Lawrence's* precedent ... [b]ut for us preemptively to take that step would exceed our mandate as a lower court." *Williams,* 378 F.3d at 1238; *see also Lofton,* 358 F.3d at 827 (the "legislature is the proper forum for this debate, and we do not sit as a superlegislature 'to award by judicial decree what was not achievable by political consensus.'") (quoting *Thomasson v. Perry,* 80 F.3d 915, 923 (4th Cir.1996)).[10] Therefore, the Court finds that the right to marry a person of the same sex is not a fundamental right under the Constitution.

### *EQUAL PROTECTION*

■ Plaintiffs also argue that this Court should apply strict scrutiny in determining the constitutionality of DOMA because it violates the Equal Protection Clause of the Fourteenth Amendment.[11] The Eleventh Circuit has held that homosexuality is not a suspect class that would require subjecting DOMA to strict scrutiny under the Equal Protection Clause of the Fourteenth Amendment or the equal protection component of the Fifth Amendment's Due Process Clause. *See Lofton,* 358 F.3d at 818 (holding that homosexuality is not a suspect class and noting that "all of our sister circuits that have considered the question have declined to treat homosexuals as a suspect class."); *see also Kandu,* 315 B.R. at 144 (*Lawrence* "did not hold that same-sex couples constitute a suspect or semi-suspect class under an equal protection analysis") Moreover, DOMA does not discriminate on the basis of sex because it treats women and men

---

10. The Court also rejects Plaintiff's argument that "[s]anctioning same-sex sex and then not allowing a formal same-sex marriage based on love and commitment is illogical and incongruous." (Plaintiffs' Memorandum of Law in Opposition (Dkt.# 48), p. 8). Plaintiffs' argument is flawed because the Supreme Court did not sanction homosexual sex in *Lawrence,* rather the Court merely held that Texas could not criminalize private sexual conduct between consenting adults of the same sex. The Eleventh Circuit has noted that there is a distinct difference between protecting the right to engage in private conduct without facing criminal sanctions and the "affirmative right to receive official and public recognition." *Lofton,* 358 F.3d at 817.

11. The Court again notes that the Fourteenth Amendment only applies to the states and that Plaintiffs' equal protection claims should have been brought pursuant to the equal protection component of the Due Process Clause of the Fifth Amendment. *See Kandu,* 315 B.R. at 141–42.

equally. *Kandu*, 315 B.R. at 143 ("... DOMA does not classify according to gender, and the Debtor is not entitled to heightened scrutiny under this theory."). Therefore this Court must apply rational basis review to its equal protection analysis of the constitutionality of DOMA.

## RATIONAL BASIS REVIEW

As the Court noted above, because Plaintiffs do not have a fundamental right to enter into a same-sex marriage and because DOMA does not create a suspect classification, the constitutionality of DOMA is reviewed under the rational basis test. Under rational basis review, this Court must determine whether the challenged legislation is rationally related to a legitimate state interest. *See Lofton*, 358 F.3d at 818 (citing *Heller v. Doe*, 509 U.S. 312, 313–14, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)). "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). Rational basis review is "very deferential to the legislature, and does not permit this Court to interject or substitute its own personal views of DOMA or same-sex marriage." *Kandu* at 145. This presumption of validity remains true "even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Lofton*, 358 F.3d at 818 (quoting *Romer v. Evans*, 517 U.S. 620, 632, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996)).

The burden is on the Plaintiffs to negate "every conceivable basis which might support [the legislation], whether or not the basis has a foundation in the record." *Id.* at 818, (quoting *Heller* 509 U.S. at 320–21). The United States has "no obligation to produce evidence to sustain the rationality of a statutory classification." *Id.* (quoting *Heller*, 509 U.S. at 320, 113 S.Ct. 2637). "A statutory classification fails rational-basis review only when it 'rests on grounds wholly irrelevant to the achievement of the State's objective.'" *Heller*, 509 U.S. at 324, 113 S.Ct. 2637 (quoting *Holt Civic Club v. City of Tuscaloosa*, 439 U.S. 60, 71, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978)).

The United States asserts that DOMA is rationally related to two legitimate governmental interests. First, the government argues that DOMA fosters the development of relationships that are optimal for procreation, thereby encouraging the "stable generational continuity of the United States." (Memorandum in Support of Motion to Dismiss (Dkt.# 39), pp. 15–16). DOMA allegedly furthers this interest by permitting the states to deny recognition to same-sex marriages performed elsewhere and by adopting the traditional definition of marriage for purposes of federal statutes. Second, DOMA "encourage[s] the creation of stable relationships that facilitate the rearing of children by both of their biological parents." (Memorandum in Support of Motion to Dismiss (Dkt.# 39), pp. 15–16). The government argues that these stable relationships encourage the creation of stable families that are well suited to nurturing and raising children.

Plaintiffs offer little to rebut the government's argument that DOMA is rationally related to the government's proffered legitimate interests. Rather, Plaintiffs repeatedly urge the Court to apply the more rigid strict scrutiny analysis.

Although this Court does not express an opinion on the validity of the government's proffered legitimate interests, it is bound by the Eleventh Circuit's holding that encouraging the raising of children in homes consisting of a married mother and father is a legitimate state interest. *See Lofton,* 358 F.3d at 819–20. DOMA is rationally related to this interest. Moreover, Plaintiffs have failed to satisfy their burden of establishing that DOMA fails rational basis review. *See Lofton,* 358 F.3d at 818–19; *Kandu,* 315 B.R. at 148.[12] Accordingly, the United States' motion to dismiss is granted.[13]

## CONCLUSION

In short, Plaintiffs' argument is that, given their recent "civil rights revolution," the United States Supreme Court is likely to declare that same-sex marriage is a fundamental right that is protected by the Constitution. Plaintiffs are asking this Court to create such a fundamental right immediately, before the Supreme Court revisits the issue of same-sex marriage. But that is not this Court's role. This Court is bound to follow the precedent established by the Eleventh Circuit Court of Appeals and the United States Supreme Court. None of their precedent acknowledge or establish a constitutional right to enter into a same-sex marriage. The legislatures of the individual states may decide to permit same-sex marriage or the Supreme Court may decide to overturn its precedent and strike down DOMA. But,

until then, this Court is constrained to hold DOMA and Florida Statutes § 741.212 constitutionally valid.

It is therefore ORDERED AND ADJUDGED that:

1. United States Attorney General John Ashcroft's Motion to Dismiss (Dkt.# 31) is GRANTED.

2. Plaintiffs' claim against Defendant Ashcroft is dismissed and the Clerk is directed to terminate him as a party.

---

12. Moreover, despite Justice Scalia's fears in *Lawrence,* the Eleventh Circuit has recently reiterated that the "furtherance of public morality [is] a legitimate state interest." *Williams,* 378 F.3d at 1238 n. 8. "One would expect the Supreme Court to be manifestly more specific and articulate than it was in *Lawrence* if now such a traditional and significant jurisprudential principal has been jettisoned wholesale (with all due respect to Justice Scalia's ominous dissent notwithstanding)." *Id.*

13. The Court also finds that Plaintiffs' arguments that DOMA violates the Privileges and Immunities Clause and the Commerce Clause are without merit. *See Saenz v. Roe,* 526 U.S. 489, 500, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999); *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.,* 511 U.S. 383, 402, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994); *Nehme v. I.N.S.,* 252 F.3d 415, 430 n. 18 (5th Cir.2001).