LaROSE, Judge,
Concurs with opinion.
I concur in the court’s opinion to the extent it concludes that the Full Faith and Credit Clause of the United States Constitution required the trial court to exercise jurisdiction over Danielle’s petition for dissolution of marriage. I write separately to explain my view that before any full faith and credit analysis occurs, we need to explain why Florida’s ban on recognizing same-sex marriage does not erect an un-scalable barrier to the trial court’s exercise of jurisdiction. Indeed, a proper characterization of the claimed right at issue in this case demonstrates- that sections 741.212 and 741.04 have minimal application to a case involving the divorce of a same-sex couple validly married in another state.
As the court’s opinion recognizes, the current state of the law compels the trial court to entertain Danielle’s petition for dissolution of marriage. Some thirty-seven states and the District of Columbia now allow same-sex marriage. See Robert Barnes, Clarence Thomas Faults Supreme Court for Refusing to Block Gay Marriage in Alabama, Washington Post (Feb. 9, 2015, 8:33PM), http://www.washingtonpost. com/pohtics/courts_law/supremecourt-refuses-to-hold-back-alabama-same-sexmarriages/2015/02/09/203d8494-b06b-ll e4-854b-a38dl3486bal_dstory.html. In ■most of those jurisdictions, same-sex marriage is the product of judicial decisions purporting to enforce the Due Process and Equal Protection Clauses of the U.S. Constitution. See Austin R. Nimocks, History and Recent Developments in Same-Sex Marriage Litigation, 15 Engage: J. Federalist Soc’y Prac. Groups 19, 20 (2014).
*652 Closest to home, Brenner toppled Florida’s majoritarian efforts to define marriage as being between one man and one woman. Brenner v. Scott, 999 F.Supp.2d 1278 (N.D.Fla.2014), stay 'pending appeal denied, Armstrong v. Brenner, — U.S. -, 135 S.Ct. 890, 190 L.Ed.2d 717 (Dec. 19, 2014). Brenner tells us that article I, section 27, of the Florida Constitution and related statutes, sections 741.212 and 741.04(1) (“No county court judge or clerk of the circuit court in this state shall issue a license for the marriage of any person ... unless one party is a male and the other party is a female.”), do not pass federal constitutional muster. Id. at 1290. As a result, since January 6, 2015, Florida has not enforced its ban on same-sex marriage. Seemingly, the right to wed necessarily encompasses the right of a same-sex couple to divorce. But, divorce is different from marriage. Consequently, this case is not about same-sex marriage at all.
The practical impact of the trial court’s order is that a validly married couple, albeit of the same sex, cannot access a Florida court to undo their marriage. The couple’s financial affairs remain intertwined, and their assets, if any, are not easily transferred. The trial court’s order impedes the flow of assets and capital. Particularly significant, the welfare and stability of a child parented by this couple remain in limbo. These financial and custody issues are markedly different from whether a same-sex couple is entitled to wed in Florida.
We cannot ignore the mobility of American society. See Elisabeth Oppenheimer, No Exit: The Problem of Same-Sex Divorce, 90 N.C. L. Rev. 73, 77 n. 16 (2011). We should expect that many same-sex couples validly married in other states make and will make Florida their home. Although divorce does not inevitably follow marriage, we should anticipate that many married same-sex couples, unfortunately, will need to dissolve their unions.[10] It is hard to fathom that the legislators who passed sections 741.212 and 741.04(1) envisioned a scenario where assets remain unmarketable for lack of an equitable distribution. 'Nor could they have reasonably anticipated a system that disregards the best interests of a child raised and nurtured in a same-sex home. There can be no question but that Florida has a compelling interest in protecting children subject to its jurisdiction. See Kirton v. Fields, 997 So.2d 349, 352 (Fla.2008).
How then, if at all, can a Florida trial court address the pressing issues of child custody, finances, and property distribution in a manner consistent with, what was until Brenner, a ban on recognizing or allowing same-sex marriage in Florida? Properly defining the right at issue is essential because it necessarily informs the constitutional analysis that we must apply. See State v. J.P., 907 So.2d 1101, 1120 *653 (Fla.2004) (Cantero, J., dissenting). Courts that have invalidated same-sex marriage bans on constitutional grounds consistently have held that same-sex couples enjoy a fundamental right to marry. See Ronald Turner, Same-Sex Marriage and Due Process Traditionalism, 49 U. Rich. L. Rev. 579 (2015). But that is not the issue squarely before us.
This case is not about same-sex marriage. Danielle claims a narrower right: the right of a same-sex couple, validly married in another state and now living in Florida, to seek a dissolution of marriage in Florida. A heterosexual couple under similar circumstance could easily invoke a Florida trial court’s jurisdiction. The more precise definition of the right makes it easier to apply the constitutional principles of equal protection and due process. With such precision, we need not wade into the broader legal and societal issue of- the right of same-sex individuals to marry.
Danielle is not seeking to marry. Instead, she wants the help of a Florida trial court to return her to a single status. She seeks to adjust the parties’ financial and property relationships. Importantly, she seeks some judicial direction concerning the critical matter of child custody. Dissolving the marital bond is fundamentally different than establishing that union. Danielle is not asking a Florida trial court to establish a marital bond. Rather, she seeks disengagement from a broken relationship. Upon dissolution of marriage, the parties will each be single. Apart from the mandates of any final judgment, any state or federal obligations or benefits attendant to marriage presumably will cease. Like those federal court decisions recognizing same-sex marriages, the case before us, although involving a same-sex divorce, must be analyzed principally for compliance with the Equal Protection and Due Process Clauses of the federal constitution to the extent that the trial court’s order denied relief to Danielle.
We apply a well-settled general framework for such analysis. See Brenner, 999 F.Supp.2d at 1287. The substantive component of the Due Process Clause checks state authority to enact untenable measures, even if enacted with appropriate procedural safeguards. Id. Substantive due process protects fundamental rights, those “rights and liberties which are, objectively, ‘deeply rooted in this Nation’s history and tradition’ ... and ‘implicit in the concept of ordered liberty,’ such that ‘neither liberty nor justice would exist if they were sacrificed.’ ” Washington v. Glucksberg, 521 U.S. 702, 720-21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997) (quoting Moore v. East Cleveland, 431 U.S. 494, 503, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1997) (plurality opinion); Palko v. Connecticut, 302 U.S. 319, 325, 326, 58 S.Ct. 149, 82 L.Ed. 288 (1937)).
As noted above, Brenner and a host of other cases validating same-sex marriages have declared marriage to be a fundamental right recognized by the federal constitution. See Brenner, 999 F.Supp.2d at 1281, 1289; Turner, supra. Unquestionably, in the trial court’s view, article I, section 27, of the Florida Constitution and section 741.212 classify same-sex couples differently than heterosexual couples for purposes of dissolution of marriage. Here, importantly, is where the matter of proper definition of the right sought plays a leading role.
As the court acknowledges, under Florida law, sexual orientation is not a protected class entitled to strict-scrutiny analysis. D.M.T. v. T.M.H., 129 So.3d 320, 341-42 (Fla.2013). If the right at issue, then, is the right of a same-sex couple, validly married in another state and now living in Florida, to seek a dissolution of marriage in Florida, I am hard pressed to classify this right as fundamental for federal con *654 stitutional purposes. I am aware of no case holding that the right, as I have defined it, is fundamental. Thus, Florida bears the burden of presenting only a rational basis for its classification. See United States v. Windsor, — U.S. -, 133 S.Ct. 2675, 2717, 186 L.Ed.2d 808 (2013).
The State falls short. The State fails to define properly the right at issue. The State views this case through an overly broad lens. For the State, this is a same-sex marriage case. It is not. Nonetheless, the State unnecessarily burdens itself with trying to justify a ban of same-sex marriage. Without explication, the State cites us to numerous cases where the government sought to explain the rational basis for. banning same-sex marriage as necessary to promote procreation and to have children raised in an optimal family setting. See Robicheaux v. Caldwell, 2 F.Supp.3d 910, 917 (E.D.La.2014); Sevcik v. Sandoval, 911 F.Supp.2d 996, 1014-17 (D.Nev.2012), reversed, Latta v. Otter, 771 F.3d 456 (9th Cir.2014); Jackson v. Abercrombie, 884 F.Supp.2d 1065, 1116-18 (D.Haw.2012), vacated, 585 Fed.Appx. 413 (9th Cir.2014); Standhardt v. Superior Ct., 206 Ariz. 276, 77 P.3d 451, 461 (Ariz.App.2003); Jones v. Hallahan, 501 S.W.2d 588 (Ky.App.1973); Conaway v. Deane, 401 Md. 219, 932 A.2d 571, 630-31 (2007); Baker v. Nelson, 291 Minn. 310, 191 N.W.2d 185, 186-87 (1971); In re Marriage of J.B. & H.B., 326 S.W.3d 654, 677-78 (Tex.App. 2010); Andersen v. King Cnty., 158 Wash.2d 1, 138 P.3d 963, 969, 982-84 (2006); Singer v. Hara, 11 Wash.App. 247, 522 P.2d 1187, 1191 (1974); cf. Dean v. Dist. of Columbia, 653 A.2d 307 (D.C.1995) (discussing whether homosexual orientation of parents will influence children’s sexual orientation). Seemingly, the State insists that procreation and traditional family units undergird article I, section 27 and sections 741.212 and 741.04(1). But, in the context of recognizing same-sex marriages, courts have rejected these purported interests under the lenient rational basis test.
The State’s rational basis explanation fails for another, more simple, reason. Even if Florida’s purported interest in procreation and having children raised in a heterosexual household were rational reasons to ban same-sex marriage, see House of Representatives Committee on Governmental Operations Final Bill Research & Economic Impact Statement on H.B. 117, at § II(B) (Fla.1997), the State tells us nothing about why or how prohibiting a validly married same-sex couple from seeking a divorce in Florida advances either of these interests. Any claimed rational basis appears untethered to the right at issue.
The State has not articulated how prohibiting a trial court from dissolving a same-sex marriage, validly entered into in another state, will promote a rise in procreation. Nor does the State explain how denying this couple a divorce will optimize what it sees as an ideal environment for raising children. Indeed, in the context of a marriage dissolution, the trial court will be in an ideal situation to protect the best interest of the child parented by this couple. •
I do not lightly discount the State’s reason for enacting its laws. See Anderson v. Bd. of Pub. Instruction, 102 Fla. 695, 136 So. 334, 337 (1931). A court should defer to the State when it has provided a basis for its statutory and constitutional classifications. Id. That deference, of course, presupposes that the State has a rational basis for its position. On the record before us, the State has failed to satisfy its burden.

. The couple before us was married in Massachusetts. Returning to that Commonwealth for a divorce is simply not workable. Massachusetts imposes a one-year residency requirement on a couple seeking divorce; Massachusetts does not allow a divorce if it appears the plaintiff moved to Massachusetts for that purpose. See M.G.L.A. 208 § 5 (allowing divorce after one-year residence or if plaintiff lives in commonwealth at time of filing and cause occurred within the commonwealth, “unless it appears that the plaintiff has removed into this commonwealth for the purpose of obtaining a divorce”); see also Mass. Gen. Laws Ann. ch. 208 § 4 (2014) (allowing divorce for a cause that occurred in another jurisdiction only if parties previously lived together as spouses in the Commonwealth and one of them lived there when the cause occurred), § IB (imposing additional six-month waiting period after filing before court may grant divorce). Even if Danielle could move back to Massachusetts and obtain a divorce, uprooting a settled existence in Florida does not seem practicable.