N.R. SMITH, Circuit Judge,
concurring in part and dissenting in part.
I agree with the majority’s analysis and decisions in parts III and VI of its opinion, *1097 determining that (1) the Proponents have standing to bring this appeal; and (2) the Motion to Vacate the Judgment should be denied. Because I do not agree with the majority’s analysis of other topics regarding the constitutionality of Proposition 8, I have chosen to write separately. Ultimately, I am not convinced that Proposition 8 is not rationally related to a legitimate governmental interest. I must therefore respectfully dissent.
Before addressing the issues now presented before our panel, I want to emphasize a distinguishing point in my analysis from what may be anticipated by the reader. Similar to the California Supreme Court in its prior opinion concerning Proposition 8, our panel was not tasked with determining whether this constitutional amendment “is wise or sound as a matter of policy or whether we, as individuals, believe it should be a part of the California Constitution.” Strauss v. Horton, 46 Cal.4th 364, 93 Cal.Rptr.3d 591, 207 P.3d 48, 59 (2009). Our personal views regarding the political and sociological debate on marriage equality are irrelevant to our task. Instead, we are only asked to consider the constitutional validity of Proposition 8 under the federal Constitution. The California Supreme Court has already interpreted and applied “the principles and rules embodied in the California Constitution” to Proposition 8 and found it valid. Strauss, 93 Cal.Rptr.3d 591, 207 P.3d 48.
I.
Proponents and their supporting amici (hereinafter Proponents) argue that the United States Supreme Court’s summary dismissal in Baker v. Nelson, 409 U.S. 810, 93 S.Ct. 37, 34 L.Ed.2d 65 (1972) (mem.), “mandates reversal of the district court’s ruling.” According to Proponents, the claims raised here are the same as those rejected in Baker, and the claims are therefore foreclosed by that decision. The majority dispenses with Baker in a footnote. However, other federal courts have indicated that Baker, if it is not controlling, at least stands for exercising “restraint” when it comes to addressing due process and equal protection challenges against laws prohibiting marriage by same-sex couples. Citizens for Equal Protection v. Bruning, 455 F.3d 859, 870 (8th Cir.2006); see also Wilson v. Ake, 354 F.Supp.2d 1298, 1305 (M.D.Fla.2005) (“Baker v. Nelson is binding precedent upon this Court----”). But see In re Kandu, 315 B.R. 123, 138 (Bankr. W.D.Wash.2004) (concluding that “Baker is not binding precedent on the issues presented” because the case centered on federal Defense of Marriage Act and because “doctrinal developments” indicated Baker was no longer binding). Because Baker is binding United States Supreme Court precedent and may foreclose Plaintiffs’ claims, one must follow it or distinguish it.
A.
In Baker v. Nelson, two men were denied a marriage license by a Minnesota county clerk. 291 Minn. 310, 191 N.W.2d 185, 185 (1971). Because they were denied the license, the two men filed suit asking that the court force the clerk to grant the license. Id. In Minnesota Statutes c. 517, the Minnesota state legislature had codified that the state “d[id] not authorize marriage between persons of the same sex....” Id. at 186. On appeal, the Minnesota Supreme Court addressed several issues, including whether the Minnesota statutes prohibiting marriage by same-sex couples denied the petitioners “the equal protection of the laws” as guaranteed by the Fourteenth Amendment. Id. The Minnesota Supreme Court held that “[t]he equal protection clause of the Fourteenth Amendment ... is not offend *1098 ed by the state’s classification of persons authorized to marry.” Id. at 187. On appeal to the United States Supreme Court, the Court summarily dismissed the appeal “for want of a substantial federal question.” Baker v. Nelson, 409 U.S. 810, 93 S.Ct. 37.
Though not stated in the summary dismissal in Baker, the Supreme Court decision has long standing precedent supporting it. Throughout our nation’s history, the States have had “the absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be credited.... ” Pennoyer v. Neff, 95 U.S. 714, 734-35, 24 L.Ed. 565 (1878), reaffirmed in Sosna v. Iowa, 419 U.S. 393, 404, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).
Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of a people than any other institution, has always been subject to the control of the legislature. That body prescribes the age at which parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, its effects upon the property rights of both, present and prospective, and the acts which may constitute grounds for its dissolution.
Maynard v. Hill, 125 U.S. 190, 205, 8 S.Ct. 723, 31 L.Ed. 654 (1888).
As Justice Stewart opined in his concurrence in Zablocki v. Redhail, a State
may in many circumstances absolutely prohibit [marriage]. Surely, for example, a State may legitimately say that no one can marry his or her sibling, that no one can marry who is not at least 14 years old, that no one can marry without first passing an examination for venereal disease, or that no one can marry who has a living husband or wife.
434 U.S. 374, 392, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) (Stewart, J., concurring).
The summary dismissal of an appeal for want of a substantial federal question is a decision on the merits. Hicks v. Miranda, 422 U.S. 332, 344, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). “[U]nless and until the Supreme Court should instruct otherwise, inferior federal courts had best adhere to the view that if the Court has branded a question as unsubstantial, it remains so except when doctrinal developments indicate otherwise----” Id. (internal quotation marks omitted). “[L]ower courts are bound by summary decisions by [the Supreme] Court until such time as the Court informs (them) that (they) are not.” Id. at 344-45, 95 S.Ct. 2281 (internal quotation marks omitted). “Summary ... dismissals for want of a substantial federal question ... reject the specific challenges presented in the statement of jurisdiction and do leave undisturbed the judgment appealed from. They do prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided by those actions.” Mandel v. Bradley, 432 U.S. 173, 176, 97 S.Ct. 2238, 53 L.Ed.2d 199 (1977) (per curiam). Thus, “[a] summary disposition affirms only the judgment of the court below, and no more may be read into [the] action than was essential to sustain that judgment.” III. State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 182-83, 99 S.Ct. 983, 59 L.Ed.2d 230 (1979) (citation omitted). “Questions which ‘merely lurk in the record’ are not resolved, and no resolution of them may be inferred.” Id. at 183, 99 S.Ct. 983 (citation omitted).
The jurisdictional statements presented to the United States Supreme Court in Baker v. Nelson were as follows:
1. Whether appellee’s refusal to sanctify appellants’ marriage deprives appellants of their liberty to marry and of their property without due process of law under the Fourteenth Amendment.
*1099 2. Whether appellee’s refusal, pursuant to Minnesota marriage statutes, to sanctify appellants’ marriage because both are of the male sex violates their rights under the equal protection clause of the Fourteenth Amendment.
3. Whether appellee’s refusal to sanctify appellants’ marriage deprives appellants of them right to privacy under the Ninth and Fourteenth Amendments.
See In re Kandu, 315 B.R. at 137.
B.
Here, we must address whether the question before us involves “the precise issues presented and necessarily decided by” Baker v. Nelson, such that the Supreme Court’s summary dismissal would have precedential effect here. Alternatively, the question before us could be one that “merely lurk[ed] in the record” of Baker, and the present case would not be resolved by the Supreme Court’s summary dismissal.
In this case, the following issues were presented for review:
1. Whether [Proponents] have standing to appeal the district court’s judgment.
2. Whether Proposition 8 violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.
3. Whether Proposition 8 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.
Plaintiff-Intervenor City and County of San Francisco (hereinafter San Francisco) presented the following additional issue for review:
1. Whether Proposition 8, a constitutional amendment adopted after a plebiscite campaign that played on fears and prejudices about lesbians and gay men, violates the Equal Protection Clause of the federal Constitution where its effect is to remove the honored title “marriage” but not the incidents of marriage from same-sex couples, and its purpose is to remove the taint that its supporters believed the inclusion of lesbian and gay couples worked on the institution of marriage.
The equal protection question raised in this case seems to be distinguishable from the precise issues presented and necessarily decided in Baker, especially when the equal protection issue is framed as San Francisco advocates.[1] The equal protection issue decided in Baker rested on whether Minnesota’s “refusal, pursuant to Minnesota marriage statutes, to sanctify appellants’ marriage ... violates their rights under the equal protection *1100 clause....” In re Kandu, 315 B.R. at 137. Here, San Francisco presents the issue of whether Proposition 8’s effect of “remov[ing] the honored title ‘marriage’ but not the incident of marriage from same-sex couples” violates equal protection. This Proposition 8 issue may have “merely lurk[ed] in the record” of Baker. Unlike Minnesota, California granted same-sex couples rights to both the designation and the incidents of marriage, before withdrawing the right of access to the designation through Proposition 8. Therefore, the constitutionality of withdrawing from same-sex couples the right of access to the designation of marriage does not seem to be among the “specific challenges” raised in Baker. If so, though the precedential effect of Baker v. Nelson is not challenged by this decision, such precedent is distinguishable from the decision of the district court here.
II.
In deciding this case, one should be mindful that generally state governance over marriage is not challenged easily. However, while “marriage is a social relation subject to the State’s police power,” this does not mean that the State’s “powers to regulate marriage are unlimited notwithstanding the commands of the Fourteenth Amendment.” Loving v. Virginia, 388 U.S. 1, 7, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967). A marriage regulation “containing racial classifications,” such as the one at issue in Loving, is subject to “the very heavy burden of justification which the Fourteenth Amendment has traditionally required of state statutes drawn according to race.” Id. at 9, 87 S.Ct. 1817. However, not “every state regulation which relates in any way to the incidents of or prerequisites for marriage must be subjected to rigorous scrutiny.” Zablocki, 434 U.S. at 386, 98 S.Ct. 673 (majority opinion). Proposition 8 does not involve such a suspect classification and therefore should not be analyzed under any heightened scrutiny, but we must still ask “whether there is any rational foundation for the discrimination[ ]....” See Loving, 388 U.S. at 9, 87 S.Ct. 1817.
A.
The Plaintiffs, San Francisco, and their supporting amici (hereinafter Plaintiffs) challenge Proposition 8 under the Equal Protection Clause of the Fourteenth Amendment. However, because Proposition 8 is “a classification neither involving fundamental rights nor proceeding along suspect lines,” Heller v. Doe, 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993), I do not address the application of strict scrutiny review to Proposition 8. Under strict scrutiny review, the government would need to establish that the classification is necessary to achieve a compelling governmental interest, and there must not be a less onerous available alternative. The United States Supreme Court has not recognized that the fundamental right to marry includes a fundamental right to gay marriage. See Lawrence, 539 U.S. at 578, 123 S.Ct. 2472. Gays and lesbians are not a suspect or quasi-suspect class. High Tech Gays v. Def. Indus. Sec. Clearance Office, 895 F.2d 563, 573 (9th Cir.1990).
I also do not address intermediate scrutiny because Supreme Court precedent thus far has never held that sexual orientation is a “quasi-suspect classification.” See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 441-42, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Under that standard of review, generally applied in illegitimacy and gender cases, the government would need to establish that the classification is substantially related to an important governmental interest. See id. at 441, 105 S.Ct. 3249.
*1101 Thus, Proposition 8 is subject to rational basis review rather than to any heightened scrutiny. See id. at 440-42, 105 S.Ct. 3249.
B.
“The Fourteenth Amendment’s promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons.” Romer v. Evans, 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). Thus, when assessing the constitutionality of most government measures, we use rational basis review in an attempt “to reconcile the principle with the reality.” Id. Under rational basis review, “we will uphold the legislative classification so long as it bears a rational relation to some legitimate end.” Id.
In equal protection analysis, rational basis review “is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.” Heller, 509 U.S. at 319, 113 S.Ct. 2637 (internal quotation marks omitted). A classification “neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity.” Id. “Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.” Id. at 320, 113 S.Ct. 2637. The government is not required to “actually articulate at any time the purpose or rationale supporting its classification”; rather, a classification “must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.” Id. (internal quotation marks omitted).
Additionally, the government “has no obligation to provide evidence to sustain the rationality of a statutory classification.” Id. The measure at issue “is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data.” Id. (internal quotation marks omitted). “[T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it....” Id. (internal quotation marks omitted). Further, a legislature’s generalizations may pass rational basis review “even when there is an imperfect fit between means and ends.” Id. at 321, 113 S.Ct. 2637. In sum, the measure need only have “arguable” assumptions underlying its “plausible rationales” to survive constitutional challenge. Id. at 333, 113 S.Ct. 2637.
However, “even the standard of rationality ... must find some footing in the realities of the subject addressed by the legislation.” Id. at 321, 113 S.Ct. 2637. Also, some interests are not legitimate governmental interests. E.g., Romer, 517 U.S. at 634, 116 S.Ct. 1620 (stating that “animosity toward the class of persons affected” is not a legitimate governmental interest); Cleburne, 473 U.S. at 448, 105 S.Ct. 3249 (stating that “mere negative attitudes, or fear” are not legitimate governmental interests); U.S. Dep’t of Agric. v. Moreno, 413 U.S. 528, 534, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973) (stating that a “bare ... desire to harm a politically unpopular group” is not a legitimate governmental interest).
As a general rule, states may use their police power to regulate the “morals” of their population. See, e.g., Berman v. Parker, 348 U.S. 26, 32, 75 S.Ct. 98, 99 L.Ed. 27 (1954). In his dissent in Lawrence, 539 U.S. at 589-91, 123 S.Ct. 2472 (Scalia, J., dissenting), Justice Scalia argued that “[cjountless judicial decisions and legislative enactments have relied on the ancient *1102 proposition that a governing majority’s belief that certain sexual behavior is ‘immoral and unacceptable’ constitutes a rational basis for regulation.” Id. at 589, 123 S.Ct. 2472. He then suggested that the Supreme Court has relied on morality as the basis for its decision making and states, “[s]tate laws against bigamy, same-sex marriage, adult incest, prostitution, masturbation, adultery, fornication, bestiality, and obscenity are likewise sustainable only in light of validation of laws based on moral choices.” Id. at 590, 123 S.Ct. 2472.
However, Justice O’Connor articulated a different perspective in determining whether moral disapproval may serve as a rational basis for equal protection. She outlined that moral disapproval is not a legitimate state interest to justify, by itself, a statute that bans homosexual conduct. She stated that “[mjoral disapproval of this group, like a bare desire to harm the group, is an interest that is insufficient to satisfy i'ational basis review under the Equal Protection Clause.” Id. at 582, 123 S.Ct. 2472 (O’Connor, J., concurring). She continued: “Indeed, we have never held that moral disapproval, without any other asserted state interest, is a sufficient rationale under the Equal Protection Clause to justify a law that discriminates among groups of persons.” Id. The Lawrence majority opinion seems to have implicitly agreed with Justice O’Connor, when it stated that a court’s “obligation is to define the liberty of all, not to mandate its own moral code.” Id. at 559, 123 S.Ct. 2472 (majority opinion) (internal quotation mark omitted).
Therefore, such interests (e.g., animus, negative attitudes, fear, a bare desire to harm, and moral disapproval) alone will not support the constitutionality of a measure, because the Equal Protection Clause does not permit a “status-based enactment divorced from any factual context from which [the courts] could discern a relationship to legitimate state interests,” or a “classification of persons undertaken for its own sake.... ” Romer, 517 U.S. at 635, 116 S.Ct. 1620.
III.
The majority concludes that “Romer governs our analysis notwithstanding the differences between Amendment 2 and Proposition 8,” because of the similarities between the measures at issue in Romer and in the present case. However, the differences between Amendment 2 and Proposition 8 indicate that Romer does not directly control our analysis of the constitutionality of Proposition 8.
Before comparing Amendment 2 to Proposition 8, I want to attempt to clarify the extent of the Plaintiffs’ interest asserted here. One must understand the unique manner in which California defines this interest. Because the California Supreme Court defined and clarified that interest in its Strauss v. Horton opinion, I quote liberally from it.
Proposition 8 “properly must be understood as having a considerably narrower scope and more limited effect” than what might be the case in other states. Strauss, 93 Cal.Rptr.3d 591, 207 P.3d at 61. “Proposition 8 does not entirely repeal or abrogate the aspect of a same-sex couple’s state constitutional right to ... choose one’s life partner and enter with that person into a committed, officially recognized, and protected family relationship that enjoys all of the constitutionally based incidents of marriage.” Id. (internal quotation marks omitted).
Nor does Proposition 8 fundamentally alter the meaning and substance of state constitutional equal protection principles .... Instead, the measure carves out a narrow and limited exception to these state constitutional rights, reserv *1103 ing the official designation of the term “marriage” for the union of opposite-sex couples as a matter of state constitutional law, but leaving undisturbed all of the other extremely significant substantive aspects of a same-sex couple’s state constitutional right to establish an officially recognized and protected family relationship and the guarantee of equal protection of the laws.

Id.

Further, the California Supreme Court continued, “as a qualitative matter, the act of limiting access to the designation of marriage to opposite-sex couples [through Proposition 8] does not have a substantial or, indeed, even a minimal effect on the governmental plan or framework of California that existed prior to the amendment.” Id., 93 Cal.Rptr.3d 591, 207 P.3d at 62.
However, the California Supreme Court was also quick to point out that this differentiation did not diminish or minimize “the significance of the official designation of ‘marriage,’” which they characterized as “a vital factor” in their prior decision holding that failing to provide access to this designation to same-sex couples “impinged upon the privacy and due process rights of same-sex couples and violated those couples’ right to the equal protection of the laws guaranteed by the California Constitution.” Id., 93 Cal.Rptr.3d 591, 207 P.3d at 59, 61.
Therefore, “Proposition 8 reasonably must be interpreted in a limited fashion as eliminating only the right of same-sex couples to equal access to the designation of marriage, and as not otherwise affecting the constitutional right of those couples to establish an officially recognized family relationship.” Id., 93 Cal.Rptr.3d 591, 207 P.3d at 76.
Accordingly, although Proposition 8 eliminates the ability of same-sex couples to enter into an official relationship designated “marriage,” in all other respects those couples continue to possess, under the state constitutional privacy and due process clauses, “the core set of basic substantive legal rights and attributes traditionally associated with marriage,” including, “most fundamentally, the opportunity of an individual to establish—with the person with whom the individual has chose to share his or her life—an officially recognized and protected family possessing mutual rights and responsibilities and entitled to the same respect and dignity accorded a union traditionally designated as marriage.” Like opposite-sex couples, same-sex couples enjoy this protection not as a matter of legislative grace, but of constitutional right.
Id., 93 Cal.Rptr.3d 591, 207 P.3d at 77 (citation omitted).
A.
In Romer, Colorado voters adopted Amendment 2 to the State Constitution, which “prohibits all legislative, executive, or judicial action at any level of state or local government designed to protect ... gays and lesbians.” 517 U.S. at 624, 116 S.Ct. 1620. Amendment 2 was passed in response to municipal ordinances enacted in various Colorado cities that protected “persons discriminated against by reason of their sexual orientation.” Id. The Supreme Court examined Amendment 2 under rational basis review, where “if a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end.” Id. at 631, 116 S.Ct. 1620. The Supreme Court held that Amendment 2 failed rational basis review for two reasons. Id. at 632, 116 S.Ct. 1620. “First, the amendment has the peculiar property of imposing *1104 a broad and undifferentiated disability on a single named group, an exceptional and ... invalid form of legislation.” Id. “Second, its sheer breadth is so discontinuous with the reasons offered for it that the amendment seems inexplicable by anything but animus toward the class if affects; it lacks a rational relationship to legitimate state interests.” Id.
B.
There are several ways to distinguish Romer from the present ease. First, in Romer, the Supreme Court stated that “[t]he change Amendment 2 works in the legal status of gays and lesbians in the private sphere is far reaching, both on its own terms and when considered in light of the structure and operation of modern anti-discrimination laws.” Id. at 627, 116 S.Ct. 1620. Here, “Proposition 8 reasonably must be interpreted in a limited fashion as eliminating only the right of same-sex couples to equal access to the designation of marriage, and as not otherwise affecting the constitutional right of those couples to establish an officially recognized family relationship.” Strauss, 93 Cal.Rptr.3d 591, 207 P.3d at 76. Thus, Romer is inapposite, because Proposition 8 eliminates the right of access to the designation of marriage from same-sex couples, rather than working a far reaching change in their legal status.
Second, Amendment 2’s “sheer breadth is so discontinuous with the reasons offered for it that the amendment seems inexplicable by anything but animus toward the class it affects.” Romer, 517 U.S. at 632, 116 S.Ct. 1620. Again, Proposition 8 “carves out a narrow and limited exception to [the] state constitutional rights” of privacy and due process. Strauss, 93 Cal.Rptr.3d 591, 207 P.3d at 61. Proposition 8 therefore lacks the “sheer breadth” that prompted the Supreme Court to raise the inference of animus in Romer.
The effect of animus is also unclear. In Romer, the Supreme Court stated that “laws of the kind now before us raise the inevitable inference that the disadvantage imposed is born of animosity towards the class of persons affected.” 517 U.S. at 634, 116 S.Ct. 1620. The Supreme Court indicated that Amendment 2 was constitutionally invalid, because its only purpose was animus; Amendment 2 was not “directed to any identifiable legitimate purpose or discrete objective.” Id. at 635, 116 S.Ct. 1620. In short, Romer was a case where the only basis for the measure at issue was animus. However, in a case where the measure at issue was prompted both by animus and by some independent legitimate purpose, the measure may still be constitutionally valid. The Supreme Court has stated that while “negative attitudes,” “fear” or other biases “may often accompany irrational (and therefore unconstitutional) discrimination, their presence alone does not a constitutional violation make.” Bd. of Trustees of Univ. of Ala. v. Garrett, 531 U.S. 356, 367, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) (discussing Cleburne, 473 U.S. at 448, 105 S.Ct. 3249). If “animus” is one such bias, its presence alone may not make Proposition 8 invalid if the measure also rationally relates to a legitimate governmental interest.
Finally, gays and lesbians were burdened by Amendment 2, because it “operate[d] to repeal and forbid all laws or policies providing specific protection for gays or lesbians from discrimination by every level of Colorado government.” Romer, 517 U.S. at 629, 116 S.Ct. 1620. In contrast, “although Proposition 8 eliminates the ability of same-sex couples to enter into an official relationship designated ‘marriage,’ in all other respects those couples continue to possess, under the *1105 state constitutional privacy and due process clauses, the core set of basic substantive legal rights and attributes traditionally associated with marriage.... ” Strauss, 93 Cal.Rptr.3d 591, 207 P.3d at 77 (internal quotation marks omitted). Put otherwise, Proposition 8 does not- burden gays and lesbians to the same extent Amendment 2 burdened gays and lesbians in Colorado.
C.
Proponents argue that the fact that Proposition 8 withdrew from same-sex couples the existing right of access to the designation of marriage should be significant in our constitutional analysis. However, Supreme Court equal protection cases involving challenges to measures withdrawing an existing right do not indicate that the withdrawal should affect our analysis. Instead, it seems that the court has upheld legislation that withdraws, rather than reserves, some legal right. E.g., U.S. R.R. Ret. Bd. v. Fritz, 449 U.S. 166, 176-77, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980) (applying “traditional” principles of rational basis review to Congress’s determination “that some of those who in the past received full windfall benefits would not continue to do so”); City of New Orleans v. Dukes, 427 U.S. 297, 303-05, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (per curiam) (concluding that city’s elimination of rights of some pushcart food vendors, but not others, was “not constitutionally impermissible”). In fact, in its decision in Romer, the Supreme Court does not base its decision on this contention. Rather, it mentioned withdrawing specific legal protections from gays and lesbians only in the context of referring to the irrational targeting of that group when compared to the sweeping change Amendment 2 created in the law.[2] Romer, 517 U.S. at 627, 116 S.Ct. 1620.
D.
The above differences between Amendment 2 and Proposition 8 indicate that Romer does not directly control here. In Romer, the Supreme Court found that animus alone was the purpose behind Amendment 2. Here, the majority backs into its inference of animus, first determining that all other bases for Proposition 8 are constitutionally invalid. Assuming animus or moral disapproval were one of the purposes of Proposition 8, the measure would still survive rational basis review if there were also a valid rational basis behind Proposition 8. Only if there were no other basis would Proposition 8 fail rational basis review. Thus, our task is to determine whether Proposition 8 rationally relates to any independent legitimate governmental interest.
IV.
In our case, Proponents argue that Proposition 8, defining marriage as the union of one man and one woman, is ra *1106 tionally related to a legitimate governmental interest for several reasons. Some of those reasons have already been discussed in the majority opinion and need no further discussion here. However, two of those reasons deserve more discussion, because they have been credited by other courts: (1) a responsible procreation theory, justifying the inducement of marital recognition only for opposite-sex couples, because it “steers procreation into marriage” because opposite-sex couples are the only couples who can procreate children accidentally or irresponsibly; and (2) an optimal parenting theory, justifying the inducement of marital recognition only for opposite-sex couples, because the family structure of two committed biological parents—one man and one woman—is the optimal partnership for raising children. See, e.g., Citizens for Equal Protection, 455 F.3d at 867-68.
A.
Proponents argue that Proposition 8, defining marriage as the union of one man and one woman, preserves the fundamental and historical purposes of marriage. They argue that, if the definition of marriage between a man and a woman is changed, it would fundamentally redefine the term from its original and historical procreative purpose. This shift in purpose would weaken society’s perception of the importance of entering into marriage to have children, which would increase the likelihood that couples would choose to cohabitate rather than to get married. They also argue that irresponsible procreation, by accident or willfully in a cohabitation relationship, will result in less stable circumstances for children and that same-sex couples do not present this threat of irresponsible procreation. They argue that, in the case of unintended pregnancies, the question is not whether the child will be raised by two opposite-sex parents, but rather whether it will be raised, on the one hand by two parents, or on the other hand by its mother alone (often with the assistance of the state). “Proposition 8 seeks to channel potentially procreative conduct into relationships where that conduct is likely to further, rather than harm, society’s interest in responsible procreation and childrearing.”
Proponents also argue the “optimal parenting” rationale serves as a rational basis for Proposition 8. The optimal parenting rationale posits that Proposition 8 promotes the optimal setting for the responsible raising and care of children-by their biological parents in a stable marriage relationship. Proponents offer many judicial decisions and secondary authorities supporting both rationales.
In sum, Proponents argue that Proposition 8 is rationally related to legitimate governmental interests.
B.
The first requirement of rational basis review is that there must be some conceivable legitimate governmental interest for the measure at issue.[3]
1.
The California Supreme Court indicated that responsible procreation is a legitimate governmental interest:
Whether or not the state’s interest in encouraging responsible procreation properly can be viewed as a reasonably conceivable justification for the statutory limitation of marriage to a man and a *1107 woman for purposes of the rational basis equal protection standard, this interest clearly does not provide an appropriate basis for defining or limiting the scope of the constitutional right to marry.... [AJlthough the state undeniably has a legitimate interest in promoting “responsible procreation, ” that interest cannot be viewed as a valid basis for defining or limiting the class of persons who may claim the protection of the fundamental constitutional right to marry.
In re Marriage Cases, 43 Cal.4th 757, 76 Cal.Rptr.3d 683, 183 P.3d 384, 432 (2008) (emphasis added), superseded by constitutional amendment as stated in Strauss, 93 Cal.Rptr.3d 591, 207 P.3d 48.
2.
With regard to the optimal parenting rationale, the California Supreme Court stated the following about “the state’s interest in fostering a favorable environment for the procreation and raising of children”:
[A]lthough promoting and facilitating a stable environment for the procreation and raising of children is unquestionably one of the vitally important purposes underlying the institution of marriage and the constitutional right to marry, past cases make clear that this right is not confined to, or restrictively defined by, that purpose alone. As noted above, our past cases have recognized that the right to marry is the right to enter into a relationship that is the center of the personal affections that ennoble and enrich human life—a relationship that is at once the most socially productive and individually fulfilling relationship that one can enjoy in the course of a lifetime. The personal enrichment afforded by the right to marry may be obtained by a couple whether or not they choose to have children, and the right to marry never has been limited to those who plan or desire to have children.... [Uhe state constitutional right to marry ... cannot properly be defined by or limited to the state’s interest in fostering a favorable environment for the procreation and raising of children.
Marriage Cases, 76 Cal.Rptr.3d 683, 183 P.3d at 432 (citations and internal quotation marks omitted). Thus, the California Supreme Court discussed “the state’s interest in fostering a favorable environment for the protection and raising of children” without using the “legitimate interest” and “for the purposes of the rational basis equal protection standard” language used to discuss “responsible procreation.” See id.
a.
Plaintiffs argue that the optimal parenting rationale cannot be a legitimate governmental interest because same-sex couples in domestic partnerships have all the substantive parenting rights opposite-sex couples in marriages enjoy. Additionally, California family law does not give any official preferences to opposite-sex parents.[4] Proposition 8 did not change this *1108 factual situation, because it “leav[es] undisturbed ... a same-sex couple’s state constitutional right to establish an officially recognized and protected family relationship and the guarantee of equal protection of the laws.” Strauss, 93 Cal.Rptr.3d 591, 207 P.3d at 61. “This state’s current policies and conduct regarding homosexuality ... recognize that gay individuals are fully capable of entering into the kind of loving and enduring committed relationships that may serve as the foundation of a family and of responsibly caring for and raising children.” Marriage Cases, 76 Cal. Rptr.3d 683, 183 P.3d at 428.
The parties argue about whether this analysis subjects Proposition 8 to heightened scrutiny rather than rational basis review. In my view, while Plaintiffs may give a correct accounting of California law, it does not necessarily follow that the optimal parenting rationale is an illegitimate governmental interest, because it contradicts existing laws on parenting and the family. For example, a posited reason offered by one lawmaking body after being rejected by another lawmaking body can “provide! ] a conceivable basis” for a measure. FCC v. Beach Comm’ns, Inc., 508 U.S. 307, 318, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). In Beach Communications, the Supreme Court accepted a posited reason for a federal agency regulation, even though Congress had previously rejected that purpose and the regulation presented a conflict in the statutory scheme.[5] Id. Thus, even if California’s legislature previously rejected the optimal parenting rationale in its parenting laws (and Proposition 8 is inconsistent with its statutory scheme), that does not prevent the people of California from adopting Proposition 8 under that rationale.
b.
In Heller, the Supreme Court stated that “legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data.” 509 U.S. at 320, 113 S.Ct. 2637 (citations omitted). However, the Supreme Court went on to state that “even the standard of rationality as we so often have defined it must find some footing in the realities of the subject addressed by the legislation.” Id. at 321, 113 S.Ct. 2637.
Under rational basis review, the challenger has the burden to “negative every conceivable basis which might support” the measure. Id. at 320, 113 S.Ct. 2637. In light of this burden, Plaintiffs have offered many secondary authorities to support their argument that the optimal parenting rationale cannot be a legitimate governmental interest. “Against [a] background of more than 100 peer-reviewed studies, the State of California could not reasonably accept as a true—or even debatable— statement of fact Proponents’ view that only opposite-sex couples can create an ‘ideal’ childrearing environment.” Thus, “[i]t is not an end that the State rationally *1109 could adopt as its own and therefore cannot sustain Proposition 8.”
Although Proponents were not required to put on any evidence under rational basis review, they also produced evidence. They argue that their evidence shows that married biological parents are the optimal parenting structure. Further, they argue “Plaintiffs fail to cite to a single study comparing outcomes for the children of married biological parents and those of same-sex parents. Thus, Plaintiffs have failed to undermine, let alone remove ‘from debate,’ the studies showing that married biological parents provide the best structure for raising children.”
After review, both sides offer evidence in support of their views on whether the optimal parenting rationale is a legitimate governmental interest. Both sides also offer evidence to undermine the evidence presented by their opponents. However, the standard only requires that the optimal parenting rationale be based on “rational speculation” about married biological parents being the best for children. Heller, 509 U.S. at 320, 113 S.Ct. 2637. Considering “the question is at least debatable,” id. at 326, 113 S.Ct. 2637 (intern.1 quotation marks omitted), the optimal parenting rationale could conceivably be a legitimate governmental interest.[6]
C.
Having a conceivable legitimate governmental interest is, alone, not sufficient for rational basis review. To survive rational basis review, a measure must also have a rational relationship to the posited legitimate governmental interest. In determining whether there is a rational relationship, one should bear in mind “the nature of rational-basis scrutiny, which is the most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause.”[7] Dallas, 490 U.S. at 26, 109 S.Ct. 1591.
1.
The Eighth Circuit credited the responsible procreation and optimal parenting rationales in Citizens for Equal Protection, where Nebraska had enacted a constitutional amendment prohibiting recognition of marriages by same-sex couples and other official same-sex relationships:
The State argues that the many laws defining marriage as the union of one man and one woman and extending a variety of benefits to married couples are rationally related to the government interest in “steering procreation into marriage.” By affording legal recognition and a basket of rights and benefits *1110 to married heterosexual couples, such laws “encourage procreation to take place within the socially recognized unit that is best situated for raising children.” ... The argument is based in part on the traditional notion that two committed heterosexuals are the optimal partnership for raising children, which modern-day homosexual parents understandably decry. But it is also based on a “responsible procreation” theory that justifies conferring the inducements of marital recognition and benefits on opposite-sex couples, who can otherwise produce children by accident, but not on same-sex couples, who cannot. Whatever our personal views regarding this political and sociological debate, we cannot conclude that the State’s justification “lacks a rational relationship to legitimate state interests.”
455 F.3d at 867-68 (citations omitted).
The factual context in California is distinguishable from the one the Eighth Circuit faced in Nebraska. Unlike the Nebraska constitutional amendment, which prohibited the recognition of both marriages by same-sex couples and other same-sex relationships, Proposition 8 left California’s existing domestic partnership laws intact. In California, same-sex couples in domestic partnerships still enjoy the same substantive rights and benefits as opposite-sex couples in marriages. Thus, it cannot be said that Proposition 8 “conferís] the inducements of marital ... benefits on opposite-sex couples ..., but not on same-sex couples.... ” See id. at 867. However, this distinction may not be dispositive, because the Eighth Circuit was considering both the substantive legal benefits as well as the designation of marriage.
2.
That leaves the question of whether withdrawing from same-sex couples the right to access the designation of marriage, alone, rationally relates to the responsible procreation and optimal parenting rationales.
a.
Regarding the responsible procreation rationale, Plaintiffs argue that Proponents suggest no reason to believe prohibiting same-sex couples from entering relationships designated “marriage” will make it more likely that opposite-sex couples in California will marry. Put differently, Plaintiffs argue that, because Proposition 8 does not bestow an honor on opposite-sex couples but instead withdraws an honor from same-sex couples, the responsible procreation rationale could be credited only if it is rational to believe that opposite-sex couples will be less likely to raise children in a marital family if the stature of marriage is also available to same-sex couples. Further, Plaintiffs argue that Proponents’ failure to describe how Proposition 8 rationally relates to the responsible procreation rationale indicates that the rationale lacks the required “footing in the realities of the subject addressed by the legislation.” Heller, 509 U.S. at 321, 113 S.Ct. 2637.
In response, Proponents argue that, “[b]ecause only sexual relationships between men and woman can produce children, such relationships have the potential to further—or harm—this interest in a way that other types of relationships do not.” Thus, “it follows that the commonsense distinction that our law has always drawn between opposite-sex couples, on the one hand, and all other types of relationships—including same-sex couples—on the other hand, plainly bears a rational relationship to the government interest in steering procreation into marriage.”
*1111 However, Proposition 8 is not a “distinction that [California] law has always drawn,” because it “establishes a new substantive state constitutional rule that became effective once Proposition 8 was approved by the voters.” Strauss, 93 Cal.Rptr.3d 591, 207 P.3d at 115. Also,
[n]one of the past cases discussing the right to marry—and identifying this right as one of the fundamental elements of personal autonomy and liberty protected by our Constitution—contains any suggestion that the constitutional right to marry is possessed only by individuals who are at risk of producing children accidentally, or implies that this constitutional right is not equally important for and guaranteed to responsible individuals who can be counted upon to take appropriate precautions in planning for parenthood.
Marriage Cases, 76 Cal.Rptr.3d 683, 183 P.3d at 432. In this particular context, the fact that Proposition 8 established a new rule, instead of continuing a “distinction that [California] law has always drawn,” weakens Proponents’ argument that Proposition 8 “plainly bears a rational relationship” to the responsible procreation rationale.
b.
Regarding the optimal parenting rationale, Plaintiffs argue that, because Proposition 8 does not change California’s substantive laws governing childraising, procreation, or the family structure, Proposition 8 cannot be rationally related to the optimal parenting rationale. To channel more childrearing into families led by married biological parents, they argue that Proposition 8 would have had to change those laws somehow. Rather, Proposition 8 only singles out gays and lesbians, as a group, as inferior.
Proponents contend that this argument subjects Proposition 8 to heightened scrutiny review, and that the standard for rational basis review does not require the classification be substantially related to an important governmental interest. Instead, for rational basis review, the classification must only (1) serve some conceivable governmental interest; (2) have a plausible reason for the enactment; (3) remain debatable; and (4) not be totally arbitrary. Their argument continues that, in California’s unique context, Proposition 8 only deals with the designation of the term “marriage” but leaves undisturbed all of the other significant substantive aspects of recognized and protected family relationships. Proponents’ theory only increases the likelihood that children are born and raised in a family structure of biological parents by encouraging such parents to marry; the designation of marriage for only that union would make it more likely that opposite-sex couples will want to enter into marriage and then subsequently raise their own biological offspring, rather than implying that any other union could not be good parents. Proponents claim this interest does not depend on any judgment about the relative parenting capabilities of opposite-sex and same-sex couples; it only confirms the instinctive, commonsense belief that married biological parents provide the optimal environment for raising children. Lastly, they argue there can be no requirement of narrow tailoring where there would be a perfect fit with the governmental interest and the law. If the state denied same-sex couples significant benefits under the law, the law would be more likely to fail equal protection by denying important government rights, thus increasing the burden of the test.
3.
“[C]ourts are compelled under rational-basis review to accept a legislature’s gen *1112 eralizations even when there is an imperfect fit between means and ends.” Heller, 509 U.S. at 321, 113 S.Ct. 2637. Here, the people of California might have believed that withdrawing from same-sex couples the right to access the designation of marriage would, arguably, further the interests in promoting responsible procreation and optimal parenting. “The assumptions underlying these rationales may be erroneous, but the very fact that they are ‘arguable’ is sufficient, on rational-basis review, to ‘immuniz[e]’ the congressional choice from constitutional challenge.” Beach Commc’ns, 508 U.S. at 320, 113 S.Ct. 2096 (alteration in original).
Plaintiffs argue that Proposition 8 could only advance the offered rationales through encouraging opposite-sex couples to marry, who otherwise would not marry because they disapprove of same-sex couples having the right of access to the designation of marriage and the stature that comes with the designation. Therefore, Proposition 8 impermissibly gives effect to those “private biases.” See Palmore v. Sidoti 466 U.S. 429, 433, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984). However, Supreme Court precedent does not suggest that a measure is invalid under rational basis review simply because the means by which its purpose is accomplished rest on such biases.[8] Rather, precedent indicates that such biases invalidate a measure if they are the only conceivable ends for the measure. See, e.g., Romer, 517 U.S. at 635, 116 S.Ct. 1620. Again, in determining whether there is a rational relationship, one must bear in mind that rational basis review “is the most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause.” Dallas, 490 U.S. at 26, 109 S.Ct. 1591. Thus, I cannot conclude that Proposition 8 is “wholly irrelevant” to any legitimate governmental interests. Heller, 509 U.S. at 324, 113 S.Ct. 2637 (internal quotation marks omitted).
V.
Given the presumption of validity accorded Proposition 8 for rational basis review, I am not convinced that Proposition 8 lacks a rational relationship to legitimate state interests. Precedent evidences extreme judicial restraint in applying rational basis review to equal protection cases.
Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.... [Restraints on judicial review have added force where the legislature must necessarily engage in a process of line-drawing. Defining the class of persons subject ... inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact that the line might have been drawn differently at some points is a *1113 matter for legislative, rather than judicial, consideration.
Beach Commc’ns, 508 U.S. at 315-16, 113 S.Ct. 2096 (alteration, citations, and intern.1 quotation marks omitted). Thus, the judiciary faces a conspicuous limit on our judicial role in applying equal protection to legislative enactments, because
[t]he Court has held that the Fourteenth Amendment permits States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if classification rests on grounds wholly irrelevant to the achievement of the State’s objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.
McGowan v. Maryland, 366 U.S. 420, 425-26, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). A law must be upheld unless the government’s judgment “is ‘clearly wrong, a display of arbitrary power, [or] not an exercise of judgment.’ ” Mathews v. DeCastro, 429 U.S. 181, 185, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976).
Applying rational basis review in these circumstances also requires such restraint. As the Eighth Circuit said, in Citizens for Equal Protection, 455 F.3d at 870:
In the nearly one hundred and fifty years since the Fourteenth Amendment was adopted, to our knowledge no Justice of the Supreme Court has suggested that a state statute or constitutional provision codifying the traditional definition of marriage violates the Equal Protection Clause or any other provision of the United States Constitution. Indeed, in Baker v. Nelson, ... when faced with a Fourteenth Amendment challenge to a decision by the Supreme Court of Minnesota denying a marriage license to a same-sex couple, the United States Supreme Court dismissed “for want of a substantial federal question.” There is good reason for this restraint.

. Whether prohibiting marriage by same-sex couples violates due process was an issue presented and decided in Baker v. Nelson. In this case, the district court determined that "plaintiffs seek to exercise their fundamental right to marry under the Due Process Clause,” Perry v. Schwarzenegger, 704 F.Supp.2d 921, 993 (N.D.Cal.2010), and that Proposition 8 violated the Due Process Clause, because it denied Plaintiffs this fundamental right and did not withstand strict scrutiny. Id. at 994-95. But in Baker, the Minnesota Supreme Court determined that prohibiting marriage by same-sex couples did not offend the Due Process Clause. 191 N.W.2d at 186-87. Because the United States Supreme Court “branded [that] question as unsubstantial” in its summary dismissal, the due process issue "remains so except when doctrinal developments indicate otherwise.” Hides v. Miranda, 422 U.S. at 344, 95 S.Ct. 2281 (internal quotation marks omitted). The United States Supreme Court cases following Baker do not suggest any such doctrin.1 developments have occurred. See, e.g., Lawrence v. Texas, 539 U.S. 558, 578, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) (“[This case] does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter.” (internal quotation marks omitted)).

. However, while the withdrawal of a right may not be analytically significant for rational basis review, it may still be factually significant. For example, the fact that Proposition 8 involves the withdrawal of an existing right and not the extension of a previously reserved right suggests that Johnson v. Robison, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974), is inapposite to the present case. In Johnson, the Supreme Court declared that "[w]hen ... the inclusion of one group promotes a legitimate governmental purpose, and the addition of other groups would not, we cannot say that the statute’s classification of beneficiaries and nonbeneficiaries is invidiously discriminatory.” Id. at 383, 94 S.Ct. 1160. As the majority argues, the rule from Johnson appears to be inapplicable here, because Proposition 8 involves the withdrawal from same-sex couples of the existing right to access the designation of marriage, and not the addition of same-sex couples to the group previously reserved the right.

. This requirement is easily met, because "[v]irtually any goal that is not forbidden by the Constitution will be deemed sufficient to meet the rational basis test.” Erwin Chemerinsky, Constitutional Law: Principles and Policies 698 (4th ed.2011).

. For example, "[t]he rights and obligations of registered domestic partners with respect to a child of either of them shall be the same as those of spouses.” Cal. Fam.Code § 297.5(d). Also, ''[i]t is the policy of this state that all persons engaged in providing care and services to foster children ... shall not be subjected to discrimination or harassment on the basis of their clients’ or their own actual or perceived ... sexual orientation....” Cal. Welf. & Inst.Code § 16013(a). Further, ”[t]he parent and child relationship extends equally to every child and to every parent, regardless of the marital status of the parents." Cal. Fam.Code § 7602. This legal structure is reinforced by the equal status of gays and lesbians in other areas of California's laws, such as in antidiscrimination pro *1108 tections regarding business establishments. E.g., Cal. Civ.Code § 51(b) ("All persons within the jurisdiction of this state are free and equal, and no matter what their ... sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.”).

. See also City of Dallas v. Stanglin, 490 U.S. 19, 26-28, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989) (stating that a city could rationally impose an age and time restriction on dance halls, even if it had not imposed similar restrictions on other premises where teenagers and adults congregated together; arguments focusing on the inconsistency between the classification and the "interests and objectives” of the city “misapprehend[ed] the nature of rational-basis scrutiny”).

. In Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, Justice O'Connor relied on the Fourteenth Amendment’s Equal Protection Clause to invalidate a state law criminalizing homosexual sodomy. In her concurring opinion, she stated:
That this law as applied to private, consensual conduct is unconstitutional under the Equal Protection Clause does not mean that other laws distinguishing between heterosexuals and homosexuals would similarly fail under rational basis review. Texas cannot assert any legitimate state interest here, such as national security or preserving the traditional institution of marriage. Unlike the moral disapproval of same-sex relations—the asserted state interest in this case—other reasons exist to promote the institution of marriage beyond mere moral disapproval of an excluded group.
Id. at 585, 123 S.Ct. 2472 (O’Connor, J., concurring).

. As explained above, this requirement is not a high bar. Indeed, "the classification at issue need not be correlated in fact, even in relation to an assumed purpose for which there need not be any evidence.” Robert C. Farrell, The Two Versions of Rational-Basis Review and Same-Sex Relationships, 86 Wash. L.Rev. 281, 290 (2011).

. In Palmore, the Supreme Court stated that "[plrivate biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect.” 466 U.S. at 433, 104 S.Ct. 1879. Even if Palmore indicates that giving effect to private biases through means is illegitimate, it is a case where "acknowledged racial prejudice [was] invoked to justify [a] racial classification[].” Id. Thus, the classification came under strict scrutiny. Id. at 432-33, 104 S.Ct. 1879; see also City of Richmond v. J.A. Croson Co., 488 U.S. 469, 520, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989) (Scalia, J., concurring in the judgment) ("The benign purpose of compensating for social disadvantages ... can no more be pursued by the illegitimate means of racial discrimination than can other assertedly benign purposes we have repeatedly rejected.”).
While the Supreme Court quoted Palmore in Cleburne, it did so in the context of rejecting "mere negative attitudes” or "fear” as ends. 473 U.S. at 448, 105 S.Ct. 3249.